## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**SOUTHEASTERN EMERGENCY**
**PHYSICIANS LLC**                                                        **PLAINTIFF**

**v.**                            **Case No. 4:17-cv-00492-KGB**

**ARKANSAS HEALTH &**
**WELNESS HEALTH PLAN, INC.**                                **DEFENDANT**

### ORDER

Before the Court is defendant Arkansas Health & Wellness Plan, Inc.'s ("Arkansas Health")[1], motion to dismiss plaintiff's complaint (Dkt. No. 8).  Plaintiff Southeastern Emergency Physicians, LLC ("Southeastern"), has responded in opposition to the motion, and Arkansas Health has replied (Dkt. Nos. 13, 20).  For the following reasons, the Court denies Arkansas Health's motion to dismiss (Dkt. No. 8).

### I.      Background

Southeastern filed this action against Arkansas Health on August 8, 2017 (Dkt. No. 1).  In its complaint, Southeastern seeks an award of damages against Arkansas Health based on breach of implied-in-fact contract and unjust enrichment.  Southeastern also seeks a declaratory judgment regarding the amount of compensation it is due based on services rendered to Arkansas Health policyholders and on the obligations of the parties going forward.

---

[1]  Defendant Celtic Insurance Company d/b/a Arkansas Health & Wellness Insurance Company ("Celtic"), requests in its motion to dismiss that plaintiff Southeastern amend its complaint to name the correct party defendant to this litigation (Dkt. No. 8, at 1 n.1).  Southeastern represents that it is working with Celtic to confirm this representation and will promptly file a motion if there was a misnomer (Dkt. No. 13, at 1).  For these reasons, the Court refers in this Order to defendant as Arkansas Health & Wellness Health Plan, Inc., despite Celtic's request.  Throughout its complaint, Southeastern refers to defendant Arkansas Health as "Ambetter" (Dkt. No. 1).

Southeastern represents that "this action does **not** involve any claims arising out of the denial of benefits under any of the Health Plans, or the denial of coverage for any services provided to" patients covered by Arkansas Health policies but instead involves only "a dispute over the **rate of** payment owed" for those services  (Dkt. No. 1, at 2, ¶2).  Southeastern also represents that "this action does **not** include any claim by [Southeastern] for benefits under a Health Plan based on an assignment of benefits from any [Arkansas Health policyholder]."  (Dkt. No. 1, at 2, ¶ 3).

The following facts are taken from Southeastern's complaint unless otherwise noted (Dkt. No. 1).  Southeastern is a limited liability company for an emergency medicine group practice that staffs the emergency departments at hospitals and other licensed health care facilities. Southeastern provides emergency medicine care to individuals, including Arkansas Health policyholders, at those emergency departments.   Arkansas Health is a health insurance company that underwrites and administers commercial, fully insured health plans for its policyholders. Arkansas Health pays for health care services rendered to policyholders in exchange for premiums and compensation paid by or on behalf of policyholders.

Beginning January 1, 2015, Southeastern provided professional emergency medicine services to Arkansas Health policyholders.  Southeastern provided medical services to Arkansas Health policyholders as a non-participating provider.   As a non-participating provider, Southeastern rendered services to Arkansas Health policyholders without an agreement between Southeastern and Arkansas Health dictating the amount to be paid for the services.  Southeastern is obligated by federal law to provide emergency medicine services to Arkansas Health policyholders and other individuals.

During the time that Southeastern has provided medical services to policyholders, Arkansas Health has paid materially below Southeastern's billed charges and the rates other

comparable third-parties have paid Southeastern for the same services.  Southeastern states that, as of February 2017, Arkansas Health owed hundreds of thousands of dollars as a result of underpayments made for Southeastern physicians' treatment of Arkansas Health policyholders. Southeastern asserts that it did not agree to accept payment from Arkansas Health that was less than the billed charges.  Southeastern also asserts that all of the claims at issue have been adjudicated by Arkansas Health and determined to be medically necessary, covered services for which Arkansas Health is obligated to pay on behalf of Arkansas Health policyholders.

On November 17, 2016, Southeastern sent email correspondence to Arkansas Health detailing the shortfalls in payment.  Arkansas Health responded to Southeastern on January 31, 2017, and refused to pay the outstanding charges.  On March 20, 2017, Arkansas Health proposed to pay Southeastern a lower amount based on a reduced percentage of Medicare-based reimbursement rates, instead of paying the remaining charges billed.  Southeastern rejected Arkansas Health's proposal to pay a lower amount.  Southeastern asserts that Arkansas Health continues to underpay Southeastern to date for emergency medicine services rendered to Arkansas Health policyholders.

## II.    Legal Standard

Arkansas Health moves to dismiss Southeastern's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "While a complaint attacked by a [Federal] Rule [of Civil Procedure] 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted). "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

### III.    Analysis

Arkansas Health moves to dismiss Southeastern's claims of breach of implied-in-fact contract, unjust enrichment, and declaratory judgment under Rule 12(b)(6).

### A.    Implied-In-Fact Contract

The Court will first address Arkansas Health's arguments regarding Southeastern's claim for breach of an implied-in-fact contract. "Under the common law of contracts, a contract may be either express or implied." *Phillips v. Maris Soc. Of Washington Province*, 80 F.3d 274, 276 (8th Cir. 1996) (citing *Steed v. Busby*, 593 S.W.2d 34, 38 (Ark. 1980)). "There are two classes of implied contracts, *i.e.*, those properly called implied contracts, where the contract is inferred from the acts of the parties and those which are more properly called quasi-contracts or constructive contracts, where the law implies an obligation." *Steed*, 593 S.W.2d at 38. Implied-in-fact contracts are derived "from the 'presumed' intention of the parties as indicated by their conduct." *Id.* "An implied contract is proven by circumstances showing the parties intended to contract or by circumstances showing the general course of dealing between the parties." *Id.* "A contract implied in fact does not describe a legal relationship different from that created by an express contract." *Id.*

4

Under Arkansas law, "[i]n order for a contract, express or implied, to exist, there must be: (a) competent parties; (b) subject matter; (c) legal consideration; (d) mutual agreement; (e) mutual obligations." *Berry v. Cherokee Village Sewer, Inc.*, 155 S.W.3d 35, 38 (Ark. Ct. App. 2004). "[T]he element of mutuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound." *Regional Care of Jacksonville, LLC v. Henry*, 444 S.W.3d 356, 360 (Ark. 2014). "A contract, therefore, that leaves it entirely optional with one of the parties as to whether or not he will perform his promise would not be binding on the other." *Independence Cnty. v. City of Clarksville*, 386 S.W.3d 395, 399 (Ark. 2012).

In the motion to dismiss, Arkansas Health argues that an implied-in-fact contract does not exist because there was not a mutual agreement between the parties to pay Southeastern higher reimbursement amounts than were already paid. Arkansas Health also contends that a mutual obligation did not exist requiring Arkansas Health to pay Southeastern for all medical services billed. In response, Southeastern asserts that an implied-in-fact contract did exist because Southeastern provided medical services to Arkansas Health policyholders with the reasonable expectation that Southeastern would be compensated for the full value of those services.

In the motion to dismiss, Arkansas Health argues that *Spine Imaging MRI, LLC v. Liberty Mutual Insurance Company* is similar to the current case. 743 F.Supp.2d 1034 (D. Minn. 2010). In that case, a provider of magnetic resonance imaging ("MRI") services brought claims against the insurer of its patients for breach of contract, unjust enrichment, and declaratory judgment based on the insurance company's refusal to pay for services rendered to the patients. *Id.* at 1037. However, as Southeastern argues in its response to the motion to dismiss, the Minnesota District Court dismissed plaintiff's claims for breach of contract and unjust enrichment because, although

plaintiff attempted to proceed on its claims under a theory of assignment, plaintiff failed to allege that the patients assigned their claims to plaintiff. *Id.* at 1045. The court in *Spine Imaging* reasoned that, "absent assignment by the [patients]," plaintiff lacked standing to bring the claims for breach of contract and unjust enrichment it alleged. *Id.* Therefore, *Spine Imaging* is distinguishable from this case because Southeastern expressly denies bringing its claims under an assignment of benefits. Southeastern does not attempt to assert assignment.

Arkansas Health also cites to *Abercrombie v. Aetna Health, Incorporated*, as a case similar to the current case. 176 F.Supp.3d 1202 (D. Colo. 2016). A group of chiropractors brought claims for breach of contract and unjust enrichment, among other causes of action, against healthcare insurance carriers. *Id.* at 1205. The Colorado District Court dismissed plaintiff's breach of contract claim. *Id.* at 1214. The court reasoned that a Colorado statute governing the payment of medical service fees could not be the basis for plaintiff's suit because the statute did not apply to plaintiff; the statute only governed contracts between insurance companies and insurance policyholders. *Id.* The court further reasoned that, because plaintiff expressly denied bringing the claim under the insurance policy or on behalf of the policyholders, plaintiff's breach of contract claim failed. *Id.*

Unlike the plaintiff in *Abercrombie*, Southeastern does not cite a state statute that it claims should govern. Like the plaintiff in *Abercrombie*, Southeastern states that it is not bringing claims on behalf of insurance policyholders. As Southeastern states in the complaint, Arkansas Health is a non-participating provider, and as such, Southeastern did not provide medical services according to an agreement between the parties with respect to any discounted rate of payment for the services rendered to Arkansas Health policyholders. Therefore, Southeastern must state a claim for relief

against Arkansas Health under an implied-in-fact contract theory based on the past interactions of the parties.

Arkansas Health argues that the facts of this case are similar to *William Berry, M.D., P.A. v. Cherokee Village Sewer, Incorporated*, 155 S.W.3d 35 (Ark. Ct. App. 2004). In *Berry*, plaintiff, a private corporation providing sewer services, brought suit against a professional corporation that owned several unoccupied units serviced by plaintiff for unpaid sewer-maintenance fees. *Id.* at 36. Plaintiff sued under Arkansas law based on an implied-in-fact contract with defendant. *Id.* at 37. Plaintiff admitted that there was not a written or verbal agreement with defendant concerning the payment of fees. *Id.* at 37. Defendant argued that plaintiff billed for services to properties where the water had not been used for several years. *Id.* It was undisputed that defendant did not voluntarily pay the sewer maintenance fees at issue in the dispute. *Id.* On appeal, the court held that the trial court erred in granting judgment for plaintiff based on an implied-in-fact contract. *Id.* at 39. The court reasoned that there was no express contract or evidence of consideration for an implied-in-fact contract. *Id.* Even though plaintiff sent a letter containing a new rate structure, the court found no evidence that defendant agreed to the new rate structure by paying the new fee. *Id.* at 38.

This Court disagrees that *Berry* controls. Like the facts in *Berry*, Southeastern has sent bills to Arkansas Health for medical services provided to Arkansas Health policyholders, but unlike the defendant in *Berry*, Arkansas Health has paid something for the services rendered to Arkansas Health policyholders. There is some consideration for an agreement between the parties as evidenced by the conduct of both parties. As Southeastern makes clear, this action involves only claims on which Arkansas Health has paid – not claims denied as medically unnecessary or uncovered.

7

At best, if the Court construes the facts alleged in the complaint in favor of Arkansas Health, the face of the complaint evidences a factual dispute only as to the amount due for services. This type of factual dispute is not appropriately resolved at this stage of the litigation. Based on correspondence described in, but not attached to, the complaint, through written exchanges, Southeastern continues to bill and make demand for the amounts it contends are due. Arkansas Health refuses to pay those amounts and, by correspondence, proposed "to pay a lower amount based on a reduced percentage of Medicare-based reimbursement rates." (Dkt. No. 1, at 7, ¶ 24). These facts, when construed in favor of Southeastern, as the Court is required to do at this stage of the proceedings, are sufficient to plead a claim for breach of an implied-in-fact contract. The Court denies Arkansas Health's motion to dismiss Southeastern's implied-in-fact breach of contract claim.

### B.    Unjust Enrichment

Arkansas Health also moves to dismiss Southeastern's claim of unjust enrichment. "Unjust enrichment is an equitable doctrine." *Pro-Comp Management, Inc. v. R.K. Enterprises, LLC*, 237 S.W.3d 20, 24 (2006). "To find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she must restore." *Campbell v. Asbury Automotive, Inc.*, 381 S.W.3d 21, 36 (Ark. 2011). "There must also be some operative act, intent, or situation to make the enrichment unjust and compensable." *Id.* "In short, an action based on unjust enrichment is maintainable where a person has received money or its equivalent under such circumstances that, in equity and good conscience, he or she ought not to retain." *El Paso Production Co. v. Blanchard*, 269 S.W.3d 362, 372 (Ark. 2007).

Under Arkansas law, "the general rule" for unjust enrichment is "that one cannot recover in quasi-contract when an express contract exists." *Servwell Plumbing, LLC v. Summit*

*Contractors, Inc.*, 201 S.W.3d 101, 112 (Ark. 2005).  At this stage, Southeastern is permitted to plead in the alternative.  Fed. R. Civ. P. 8(d).  "Even an innocent party who has been unjustly enriched may be compelled to surrender the fruits to another more deserving party."  *Smith v. Whitener*, 856 S.W.2d 328, 330 (Ark. Ct. App. 1993).  "If one has money belonging to another, which, in equity and good conscience, he ought not to retain, it can be recovered although there is no privity between the parties."  *Id.*  "Although the enrichment was to [defendant] and at the expense of [plaintiff], the enrichment need not have come directly from [plaintiff], but could come from a third source."  *Id.*

The Court first examines whether Southeastern's unjust enrichment claim should be dismissed due to the existence of an express contract.  As a general rule, "one cannot recover in quasi-contract when an express contract exists."  *Servwell*, 210 S.W.3d at 612.  "[A]pplication of this general rule requires a valid and enforceable written contract that fully addresses the subject of the controversy."  *Wachter Elec. Co. v. Elec. Systems, Inc.*, 2010 WL 5137361, at *3 (E.D. Ark. Dec. 9, 2010).  Arkansas Health argues that Southeastern's claim for unjust enrichment should be dismissed because the written insurance policy between Arkansas Health and the policyholders governs the payments for medical services provided by Southeastern.  In response, Southeastern argues that Arkansas Health, based on state and federal law, is obligated to pay Southeastern in full for the emergency services that were rendered.  Southeastern does not bring this case based on a theory of denial or assignment of benefits involving the policyholders.

To support its argument that a contract exists in this case and that Southeastern's claim for unjust enrichment should be dismissed, Arkansas Health cites to *32nd Street Surgery Center, LLC v. RightCHOICE Managed Care*, 820 F.3d 950 (8th Cir. 2015).  In that case, the Eighth Circuit Court of Appeals held that the district court did not err by granting summary judgment in favor of

the insurance company for the claim of unjust enrichment because the insurers' policies "clearly intend[ed] to govern" payment for medical services.  *Id.* at 957.  Here, Southeastern's claim for unjust enrichment is based solely on the interactions with Arkansas Health.  Even though the insurance policy may govern the relationship between Arkansas Health and the policyholders, there is nothing in the record at this stage of the proceeding for this Court to determine that the written insurance policies are contracts that govern the rates billed by Southeastern to Arkansas Health.  Unlike *32nd Street*, the current case is at the motion to dismiss stage.  In the complaint, Southeastern states that Arkansas Health was billed based on the services provided and in accordance with state and federal law.  Southeastern also states that Arkansas Health's payments have been materially below the rates other third-party payors have agreed to pay Southeastern for the same services.  Based on the record and at this stage of the proceeding, the Court declines to find that the insurance policy between Arkansas Health and its policyholders was a contract that bars Southeastern's claim for unjust enrichment.

The second issue the Court examines in regard to unjust enrichment is the taking of a benefit by Arkansas Health.  For Southeastern to move forward with a claim for unjust enrichment, it must show that Arkansas Health received value that was unjust.  *See Campbell v. Asbury Automotive, Inc.*, 381 S.W.3d 21, 36 (Ark. 2011).  "In Arkansas, although the enrichment to the defendant must be at the expense of the plaintiff, the enrichment need not come *directly* from the plaintiff.  The enrichment may come from a third party."  *Thompson v. Bayer Corp.*, 2009 WL 362982, at *5 (E.D. Ark. Feb. 12, 2009) (citing *Smith v. Whitener*, 856 S.W.2d 328, 330 (Ark. App. 1993)).  Arkansas Health argues that the policyholders received the benefit of Southeastern's medical services, not Arkansas Health.  In response, Southeastern asserts that Arkansas Health

received the benefit of insurance payments and premiums from policyholders, while not paying Southeastern for the full price of the provided medical services.

Federal district courts appear to be split on the issue of whether health insurance companies receive a benefit for the purposes of unjust enrichment by paying healthcare providers less than what is billed for services to insurance policy holders. *Compare Abercrombie v. Aetna Health, Inc.*, 176 F.Supp.3d 1202, 1216 (D. Colo. 2016) (an insurance company was not unjustly enriched because there was no legal duty under a Colorado statute to pay the healthcare provider more than was billed), *and Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*, 2015 WL 2198470, at *5 (S.D. Fla. May 11, 2015) ("[A] healthcare provider who provides services to an insured does not benefit the insurer."), *and Adventist Health System/Sunbelt Inc. v. Medical Sav. Ins. Co.*, 2004 WL 6225293, at *6 (M.D. Fla. March 8, 2004) ("as a matter of commonsense, the benefits of healthcare treatment flow to patients, not insurance companies") (interpreting Florida law), *with El Paso Healthcare System, Ltd. v. Molina Healthcare of New Mexico*, 683 F.Supp.2d 454, 461 (W.D. Tex. 2010) ("While it is true that the immediate beneficiaries of the medical services were the patients, and not [defendant], that company *did* receive the benefit of having its obligations to its plan members, and to the state in the interests of plan members, discharged."), *and Fisher v. Blue Cross Blue Shield of Texas, Inc.*, 2011 WL 11703781, at *8 (N.D. Tex. June 27, 2011) ("While it is true that the immediate beneficiaries of the medical services were the patients, and not Defendant, taking the facts alleged . . . as true and correct, [defendant] received the benefit of having its obligations to its plan members discharged."), *and Forest Ambulatory Surgical Associates, L.P. v. United Healthcare Ins. Co.*, 2013 WL 11323600, at *10 (C.D. Cal. March 12, 2013) ("Plaintiff sufficiently stated a claim upon which relief can be granted because the allegations . . . establish

that Defendants received the benefit of having their obligations to the [policyholders] discharged.").

The district courts in both *Adventist Health* and *Peacock Medical* relied on Florida law when reaching their decisions; Florida law requires that the benefit from unjust enrichment "be direct, not indirect or attenuated." *Adventist Health*, 2004 WL 6225293, at *6; *Peacock Medical*, 2015 WL 2198470, at *5. Compared to Arkansas law, Florida law is more restrictive with regard to the types of benefits that qualify for unjust enrichment. Under Arkansas law, the benefit from unjust enrichment is not required to come directly from plaintiff. *See Thompson v. Bayer Corp.*, 2009 WL 362982, at *5 (E.D. Ark. Feb. 12, 2009).

The district courts in *Fisher* and *El Paso Healthcare* applied Texas law to reach their decisions. Texas law characterizes the claims as quantum meruit and takes a broader view of who can benefit for the purposes of unjust enrichment.[2] *Fisher*, 2011 WL 11703781, at *8; *El Paso Healthcare*, 683 F.Supp.2d at 461. This Court is persuaded to follow the reasoning in *Fisher* and *El Paso Healthcare* because the Arkansas law regarding benefits for the purpose of unjust enrichment takes a broader view and is more akin to the law of unjust enrichment in Texas, not Florida.

Because this Court opts to follow this reasoning, the Court determines that Southeastern has alleged sufficient facts to state a claim for unjust enrichment. Southeastern alleges in its complaint that Arkansas Health has consistently paid less than the amount billed for emergency medicine services rendered to policyholders. Under this theory, according to Southeastern, by failing to pay Southeastern the full amount for medical services, Arkansas Health has retained the

---

[2] Under Arkansas law, quantum meruit is a type of recovery under the theory of unjust enrichment. *See* Howard Brill & Christian Brill, *Arkansas Law of Damages* § 31:2 (2017).

benefit of keeping premiums and other payments from Arkansas Health policyholders without paying Southeastern for all the medical services received by the policyholders.  The Court concludes, at this stage of the proceeding, that Southeastern has alleged sufficient facts to state a claim for unjust enrichment and denies Arkansas Health's motion to dismiss the unjust enrichment claim.

### C.     Declaratory Judgment

Finally, Arkansas Health contends that Southeastern's claim for declaratory relief should also be dismissed because Southeastern has not set forth facts establishing an independent obligation of Arkansas Health owed to Southeastern.  Under the Declaratory Judgment Act, this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "District courts are afforded broad discretion over these claims."  *Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 673 F.Supp.2d 875, 882 (D. Minn. 2009) (citing *Alsager v. Dist. Court of Polk Cty.*, 518 F.2d 1160, 1163 (8th Cir. 1975)).

In its complaint, Southeastern requests a declaratory judgment.  Specifically, Southeastern seeks to have this Court declare that Arkansas Health is obligated to pay Southeastern for the full value of emergency medical services provided to Arkansas Health policyholders.  Southeastern also requests a declaratory judgment as to past, present, and future amounts due to Southeastern by Arkansas Health for medical services rendered to policyholders.  In its motion to dismiss, Arkansas Health argues that because Southeastern has failed to set forth facts establishing any independent obligation owed by Arkansas Health to Southeastern, this Court must find that the claim for declaratory judgment also fails.  In response, Southeastern argues that the declaratory judgment claim also seeks to have this Court determine the parties' obligations going forward.

Southeastern cites to *HHCS Pharmacy, Incorporated v. Express Scripts, Incorporated*, as a case similar to the current case.  2016 WL 7324968 (E.D. Mo. Dec 16, 2016).  In *HHCS*, a pharmacy brought claims for breach of contract and declaratory judgment against a pharmacy benefits manager that processes and pays insurance claims for prescription drugs.  *Id.* at *1.  There, defendant terminated the provider agreement with plaintiff and, as alleged by plaintiff, diverted plaintiff's patients to other pharmacies where defendant had an ownership interest or a more favorable provider agreement.  *Id.* at *3.  The court denied the motion to dismiss the claim for declaratory judgment concluding that it was not duplicative of the breach of contract claim.  *Id.* at *5.  The court reasoned that "the declaratory judgment claim seeks the additional relief of determining the parties' rights and responsibilities under the provider agreement."  *Id.*

Because this Court denies Arkansas Health's motion to dismiss Southeastern's implied-in-fact breach of contract and unjust enrichment claims, the Court also denies Arkansas Health's motion to dismiss Southeastern's declaratory judgment claim.

## IV.    Conclusion

For the reasons previously stated, the Court grants Arkansas Health's motion to dismiss with respect to Southeastern's claims for breach of implied-in-fact contract and declaratory judgment (Dkt. No. 8).  The Court denies the motion to dismiss with respect to Southeastern's claim for unjust enrichment (*Id.*).

So ordered this 30th day of January, 2018.

Kristine G. Baker
United States District Judge