**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**SOUTHEASTERN EMERGENCY**                                              **PLAINTIFF**
**PHYSICIANS LLC**

**v.**                              **Case No. 4:17-cv-00492-KGB**

**ARKANSAS HEALTH &**
**WELLNESS HEALTH PLAN, INC.,** *et al.*                              **DEFENDANTS**

<u>**ORDER**</u>

Before the Court is plaintiff Southeastern Emergency Physicians, LLC's ("SEP") sealed motion for leave to file second amended complaint (Dkt. No. 60).  SEP previously filed an amended complaint on February 22, 2019 (Dkt. No. 48).  Defendants Arkansas Health & Wellness Plan, Inc. ("Arkansas Health Plan") and Celtic Insurance Company d/b/a Arkansas Health & Wellness Insurance Company ("Celtic") oppose this motion and filed with the Court a request to file under seal their response to plaintiff's motion for leave to file second amended complaint (Dkt. No. 63).  The Court granted that motion (Dkt. No. 79).  That same day, defendants filed their sealed response in opposition to plaintiff's motion for leave to file second amended complaint (Dkt. No. 80).  SEP filed a sealed reply to defendants' response (Dkt. No. 83).

For the following reasons, the Court grants SEP's sealed motion for leave to file second amended complaint (Dkt. No. 60).[1]

**I.     Background**

SEP filed its original complaint in this case against Arkansas Health Plan on August 2, 2017 (Dkt. No. 1).  This original complaint asserted three claims against Arkansas Health Plan:

---

[1] The Court initially entered a Sealed Order granting SEP's sealed motion for leave to file second amended complaint (Dkt. No. 93).  After consultation with the parties, the Court now enters this redacted version.

(1) breach of an implied-in-fact contract; (2) unjust enrichment/breach of implied-in-law contract; and (3) declaratory relief (*Id.*, ¶¶ 29-54). These three claims arose out of the alleged failure by Arkansas Health Plan to pay fully SEP for the emergency services SEP has provided and continues to provide to patients covered under the commercial, fully insured health plans allegedly underwritten and administered by Arkansas Health Plan (*Id.*, ¶ 1). Since SEP was pursuing implied contract claims, SEP alleged that there was no express contractual agreement governing its relationship with Arkansas Health Plan (*Id.*, ¶ 5; Dkt. No. 80, at 2).

On February 1, 2018, the Court issued a final scheduling order for this case (Dkt. No. 28). That order provided, in relevant part, that leave to amend pleadings must be sought no later than August 20, 2018 (*Id.*, at 1). On October 26, 2018, the Court issued an amended final scheduling order (Dkt. No. 44). That order provided, in relevant part, that leave to add parties or amend pleadings must be sought no later than November 30, 2018 (*Id.*, at 1). On November 30, 2018, SEP filed a motion for leave to file first amended complaint (Dkt. No. 45). That motion sought to add Celtic as a defendant to this matter as SEP had been unable to determine whether one or both of Arkansas Health Plan and Celtic were involved in underwriting and administering Ambetter Health Plans and whether one or both of Arkansas Health Plan and Celtic should be named as defendants in this case (*Id.*, ¶¶ 3-4). The Court granted this motion on February 19, 2019, and SEP filed its first amended complaint on February 22, 2019 (Dkt. Nos. 47, 48).

On May 13, 2019, more than five months after the November 30, 2018, amended deadline for seeking leave to add parties or amend pleadings, SEP moved under seal for leave to file a second amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) (Dkt. No. 60). In the present motion, SEP represents that it conducted depositions of several of defendants' witnesses in April 2019, including Chepeka McKinney, Bryan Meldrum, Kim Suggs, and Joel

Portman (*Id.*, ¶ 2). Through these depositions, SEP claims that it learned a number of key facts for the first time (*Id.*, ¶ 3). Because of these facts, SEP seeks to: (1) add NovaSys Health, Inc. ("NovaSys") as a defendant to this matter; (2) add Centene Corporation ("Centene")[2] as a defendant to this matter; (3) add a claim for breach of express contract related to the contract between SEP and NovaSys;[3] (4) add a claim for fraud related to defendants' alleged concealment, fraud, and deceit in regard to the contract between SEP and NovaSys; (5) add a claim for violations of the Arkansas Insurance Trade Practices Act ("AITPA"), Arkansas Code Annotated §§ 23-66-201, *et seq.*, and the Arkansas Deceptive Trade Practices Act ("ADTPA"), Arkansas Code Annotated §§ 4-88-101, *et seq.*, related to defendants' alleged obfuscation of the entity or entities responsible for the Ambetter product and reimbursements in Arkansas; alleged obfuscation of the method for determining the rate of reimbursement for services provided to Ambetter patients; and purported fraud, deceit, and concealment related to the contract between NovaSys and SEP; (6) add a claim to pierce the veil of the currently named defendants and NovaSys to prevent a substantial injustice and to ensure that Centene is held liable for the damages caused by the actions and omissions of its employees, even if made on behalf of the other defendants; (7) extend the time period for all claims to the limits of the applicable statute of limitations; and (8) expand the statement of facts to allege facts showing a plausible claim for relief on all of the newly asserted claims against the four defendants to be named in the second amended complaint (*Id.*, ¶¶ 9-10).

---

[2] SEP represents that Centene Corporation is the ultimate parent company of Arkansas Health Plan, Celtic, and NovaSys (Dkt. No. 60, Ex. A, ¶ 17).

[3] The express contract at issue ("the NovaSys contract") is a Letter of Agreement ("LOA") between NovaSys and TeamHealth dated September 1, 2011 (Dkt. No. 80, Ex. 1). TeamHealth is the parent company of SEP (Dkt. No. 80, at 4, 4 n.6). In Exhibit A to the NovaSys contract, SEP is listed as a delegated entity participating under this group agreement (Dkt. No. 80, Ex. 1, at 2).

SEP has included a proposed second amended complaint along with its motion reflecting these changes (*Id.*, Ex. A).

In opposition, defendants assert that SEP cannot establish the requisite "good cause" for its motion for leave filed over five months after the Court's November 30, 2018, deadline for adding parties or amending pleadings (Dkt. No. 80, at 1). In particular, defendants argue that SEP cannot show good cause because it was not diligent in attempting to meet the scheduling order's deadlines (*Id.*, at 9-15). Defendants also argue that they would be unduly prejudiced if the Court allowed SEP to file the second amended complaint at this late stage of the proceedings (*Id.*, at 15-17). Finally, defendants assert that granting SEP's leave to amend would be futile—meaning the amended complaint could not withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)—as it pertains to SEP's proposed fraud, statutory trade practices, and veil piercing claims (*Id.*, at 17-21). In support of their assertions, defendants include four exhibits: (1) SEP's contract with NovaSys, a subsidiary of Centene; (2) a 2016 email chain between Tammie Tibbits, a Senior Contract Manager on behalf of SEP, and Ms. McKinney, a Contract Negotiator on behalf of Celtic; (3) a 2016 and 2017 email chain between Ms. Tibbits, Ms. McKinney, and Mr. Meldrum, Vice President of Network Development and Contracting for Centene and Celtic; and (4) excerpts from Mr. Meldrum's deposition on April 10, 2019, and April 11, 2019 (*Id.*, Exs. 1, 2, 3, 4).

In its reply to defendants' opposition, SEP reiterates that it believes good cause exists for allowing SEP to file its second amended complaint because SEP could not have filed this amended complaint until after the recently conducted depositions (Dkt. No. 83, at 3-9).[4] SEP contends that

---

[4] The Court notes here that, due to SEP's cover sheet, the page numbers of the reply do not align with the page numbers of the reply in PDF form (e.g. the cover sheet is page one in the PDF, page one in the reply is page two in the PDF, etc.). For clarity and consistency, the Court cites to the reply's page numbers as they appear in its PDF form and treats the cover sheet as page one.

defendants would suffer no undue prejudice from the amendment, especially when compared to the prejudice SEP contends it would suffer by continuing to be deprived of the improperly withheld funds that remain in the hands of defendants (*Id.*, at 9-12). SEP also contests defendants' characterization of its proposed fraud, statutory trade practices, and veil piercing claims as "futile" (*Id.*, at 12-23). In support of its assertions, SEP includes two exhibits: (1) excerpts from Ms. McKinney's deposition on April 10, 2019, and (2) excerpts from Mr. Meldrum's deposition on April 11, 2019 (*Id.*, Exs. A, B).

Of additional relevance, SEP made an emergency motion to abate scheduling order deadlines on June 21, 2019, and the Court granted that motion the following day (Dkt. Nos. 75, 81). The Court issued a second amended final scheduling order in accordance with that motion on September 27, 2019 (Dkt. No. 87). That order did not set a new deadline for amending pleadings (*Id.*).

## II.    Legal Standard

SEP moves for leave to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), which provides that courts "should freely give leave when justice so requires." While there is no absolute or automatic right to amend, under the liberal amendment policy of Rule 15(a), "denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)).

### A.    Good Cause

Under Federal Rule of Civil Procedure 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent."  Rule 16(b)'s "good cause" standard "governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a)."  *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008)).  Eighth Circuit precedent establishes that, "[i]f a party files for leave to amend outside of the court's scheduling order, the party *must* show cause to modify the schedule."  *Sherman,* 532 F.3d at 709 (emphasis in original) (quoting *Popoalii v. Corr. Med. Servs.,* 512 F.3d 488, 497 (8th Cir. 2008)).  The "primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the [scheduling] order's requirements."  *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).  "The moving party fails to show good cause when there has been 'no change in the law, no newly discovered facts, or any other changed circumstance . . . after the scheduling deadline for amending pleadings.'"  *Powell v. Camping World RV Sales LLC*, No. 4:13-cv-00195 KGB, 2014 WL 5311525, at *5 (E.D. Ark. Oct. 16, 2014) (quoting *Hartis*, 694 F.3d at 948).  "[T]he failure to recognize the need for amended claims at an earlier date [does] not constitute good cause to excuse the untimeliness of [a] motion to amend."  *Schenk v. Chavis*, 259 F. App'x 905, 908 (8th Cir. 2008); *see also Davis v. City of St. John*, 182 F. App'x 626, 627 (8th Cir. 2006) (affirming denial of motion for leave to amend where "[a]lmost all of the information that the [plaintiffs] sought to add to their complaint had been in their possession well before the suit began").  However, good cause may be shown when plaintiff first discovered facts supporting the proposed amended complaint after the amendment deadline expired.  *See Powell*, 2014 WL 5311525, at *5;

*cf. Trim Fit, LLC v. Dickey*, 607 F.3d 528, 532 (8th Cir. 2010) (upholding district court's denial of motion to amend complaint since the need to develop additional facts in order to support new claim at late stage in the proceedings would have prejudiced defendant).

### B.    Prejudice

As mentioned above and relevant here, the Court should also consider whether the grant of a motion for leave to file an amended complaint would prejudice the nonmoving party. *See Doe v. Cassel*, 403 F.3d 986, 991 (8th Cir. 2005) ("Delay alone is not enough to deny a motion to amend; prejudice to the nonmovant must also be shown." (quoting *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 841 (8th Cir. 2004))).  For example, "[m]otions that would prejudice the nonmoving party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy' are particularly disfavored." *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 395 (8th Cir. 2016) (quoting *Steir v. Girl Scouts of the U.S.A.*, 383 F.3d 7, 12 (1st Cir. 2004)); *see also Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) (noting that prejudice can come in the form of "the burdens of additional discovery and delay to the proceedings").  Additionally, prejudice can be found in "forcing [a party] to re-litigate the dispute on new bases . . . and to incur new rounds of additional and costly discovery, and depriving it of the meaningful value of obtaining summary judgment." *Kmak v. Am. Century Cos., Inc.*, 873 F.3d 1030, 1035 (8th Cir. 2017) (quoting *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774 (7th Cir. 1995)).  The Court notes that "[a]ny prejudice to the nonmovant must [also] be weighed against the prejudice to the moving party by not allowing the amendment." *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998) (citing *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir. 1981)).  However, the Court need "not consider prejudice [to the nonmovant] if the movant has not been diligent in

meeting the scheduling order's deadlines." *Kmak*, 873 F.3d at 1034 (quoting *Hartis*, 694 F.3d at 948).

### C.    Futility

Additionally, "[a] district court's denial of leave to amend a complaint may be justified if the amendment would be futile." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (quoting *Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013)).  "Denial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "While a complaint attacked by a [Federal] Rule [of Civil Procedure] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted).  "[T]he complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999) (citing *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)).  "When ruling on a motion to dismiss, the district court must accept the allegations contained in the

complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

### III.   Argument

#### A.   Good Cause

The parties dispute whether good cause exists for SEP's motion. SEP maintains that good cause exists as it only learned a number of key facts that provide the basis for its proposed additional claims via the April 2019 depositions (Dkt. No. 60, ¶ 3). In particular, SEP claims that it learned, through these depositions: (1) that the claims in this case were in fact governed by an express written contract between SEP and NovaSys; (2) that defendants refused to disclose the existence or potential applicability of the NovaSys contract to the claims at issue in this case to thwart SEP from investigating these claims and determining defendants' true liability for these claims; (3) that the NovaSys contract made SEP a participating provider[5] for all of the claims at issue in this case; (4) that the NovaSys contract has never been terminated; (5) that the named defendants are controlled and dominated by their ultimate parent company Centene; and (6) the extent to which the currently named defendants, NovaSys, and Centene obfuscate the entity or

---

[5] A "participating provider" is a healthcare provider who has agreed, in an express written contract with an insurance company, to accept reimbursement from that insurance company for services provided to that insurance company's insureds at a specified rate or pursuant to a fee schedule containing rates that are typically below the provider's billed charges (Dkt. No. 60, Ex. A, ¶ 33).

entities responsible for the Ambetter product and reimbursements in Arkansas and the method by which they determined the amount paid to SEP physicians (*Id.*, ¶¶ 4-7).

Defendants insist that SEP has been aware of the information that forms the basis of its NovaSys claims since before the outset of this case and that SEP was on inquiry notice regarding the express contract issue and should have explored this issue far ahead of the Court's amendment deadline (Dkt. No. 80, at 12-13). Defendants cite telephone conferences and email exchanges to support that SEP has been aware of facts relating to the potential applicability of the NovaSys contract to the claims at issue in this case since 2016 (*Id.*, at 13). Defendants also claim that SEP did not actually learn anything in the depositions of Celtic's witnesses that constituted new information (*Id.*). Further, defendants claim that SEP was not diligent in attempting to meet the scheduling order's deadlines and develop information regarding its proposed new claims because it did not take any depositions in this case until more than four months after the amendment deadline (*Id.*, at 13-15).

SEP replies that it could not have filed its second amended complaint until after the recent depositions (Dkt. No. 83, at 3). SEP states that, in the email exchange referenced by defendants, Ms. McKinney indicated to Ms. Tibbits that SEP was a "participating provider" for Ambetter patients in Arkansas due to either an LOA or Physician Hospital Organization ("PHO"), although Ms. McKinney did not identify the NovaSys contract as the referenced LOA (*Id.*, at 4). Per SEP, Ms. Tibbits asked Ms. McKinney whether the NovaSys contract was the basis for Ms. McKinney's assertion that SEP was showing as a "participating provider" in defendants' computer systems (*Id.*). SEP claims that defendants refused to answer Ms. Tibbits' questions in the cited email string and refused to provide Ms. Tibbits with a copy of the LOA that Ms. McKinney referenced in her email (*Id.*, at 4-5). SEP further states that Ms. McKinney expressly testified that she never

answered Ms. Tibbits' questions regarding the NovaSys contract nor provided a copy of that contract to Ms. Tibbits and that Mr. Meldrum confirmed that defendants never provided the NovaSys contract to Ms. Tibbits (*Id.*, at 5).  SEP also challenges defendants' claim that SEP was on inquiry notice by arguing that defendants have concealed and obfuscated the basic facts regarding the Ambetter product and that the explanations of payment SEP received from defendants largely did not match the ███████████████ required by the NovaSys contract (*Id.*, at 5-6).

As to the depositions' timing, SEP claims that the depositions were taken well within the time set for discovery, that SEP could not have prepared for these depositions until it had substantially completed written discovery and document review, and that SEP served those discovery requests on May 2, 2018, long before the amendment deadline (*Id.*, at 6-7).  SEP further asserts that it tried to resolve its discovery disputes with defendants rather than file a motion to compel and involve the Court (*Id.*, at 7).  SEP claims that discovery it received helped guide the questioning at the depositions, but SEP asserts that it had no idea what the answers to those questions would be and that the testimony at the depositions alerted SEP that the NovaSys contract was still in force and had never been cancelled (*Id.*, at 7-8).  SEP also claims that SEP did not confirm that NovaSys is providing the network of participating providers that Ambetter patients access in Arkansas until these depositions (*Id.*, at 8).  Finally, SEP asserts that defendants' argument that the depositions revealed no new information, which rests on Mr. Meldrum's testimony ███████████████████████████████████████████████, contradicts the actual language of the NovaSys contract, which allegedly does not include limiting language, and indicates that genuine issues of material fact to be decided by a jury exist with respect to the express contract claim SEP seeks to assert (*Id.*, at 8-9).

11

The Court sides with SEP in this dispute. Defendants claim that the parties' telephone conferences and email exchanges show that SEP has been aware of facts relating to the potential applicability of the NovaSys contract since 2016 (Dkt. No. 80, at 13). The Court finds that the record evidence of both the telephone conferences and the email exchanges fails to demonstrate that SEP had such knowledge. The record evidence of telephone conferences consists of stray references in the email exchanges and briefs, without details of what was discussed during those conferences. The email exchanges also prove less than defendants assert. Defendants have submitted two email threads, one from January 20, 2016, to August 25, 2016, and one from February 17, 2016, to June 30, 2017 (*Id.*, Exs. 2, 3). The Court now turns its attention to those exchanges. As an initial matter, the Court observes that the names Centene, Arkansas Health Plan, and Ambetter all appear at various points in the email signatures and email addresses in these exchanges.

12

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ Ms. McKinney did not reply to this email.

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████ Ms. McKinney did not reply to this email (Dkt. No. 83, Ex. A,

at 2-3).

███████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████ Ms.

McKinney did not reply to this email and stated in her deposition that she did not recall replying

to this email (Dkt. No. 83, Ex. A, at 4). ████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████

    The second email thread includes some emails from the first thread and is much slimmer

(*Id.*, Ex. 3). ████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

[redacted]

[redacted]

The Court does not see how these email threads establish that SEP was "aware of information relating to the NovaSys [c]laims since well before SEP initiated this case" or that "the NovaSys [c]ontract was the subject of specific discussions between the parties in 2016" sufficient to establish a basis for a breach of express contract claim against the defendants SEP proposes naming in this action (Dkt. No. 80, at 12). [redacted] in an August 4, 2016, email from Ms. Tibbits to which Ms. McKinney never replied (*Id.*, Ex. 2, at 1). The emails certainly indicate uncertainty and confusion as to the contractual status between the parties, but

the parties never resolved that uncertainty. ████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████

      As to the contention that SEP did not learn anything new during the April 2019 depositions, the Court also sides with SEP. Defendants note that the NovaSys contract was produced by SEP during discovery on December 20, 2018, over five months before SEP filed the instant motion (Dkt. No. 80, at 4). However, the existence of the NovaSys contract did not spell the end of the inquiry. As detailed above, SEP represents that it learned key facts regarding the purported applicability of the NovaSys contract to this dispute through the April 2019 depositions (Dkt. No. 60, ¶¶ 4-7). SEP elaborates further on what it learned in the April 2019 depositions in its proposed second amended complaint (*Id.*, Ex. A). Specifically, SEP alleges that through the deposition testimony it learned, at a minimum: (1) defendants, other than Centene, have no employees, and everyone who works on behalf of the other defendants is a Centene employee; (2) the employees' testimony supports the obfuscation of the identities of the entities responsible for the Ambetter product in Arkansas; (3) the employees gave conflicting testimony regarding the methodology by which defendants determine the reimbursements for non-participating providers; (4) SEP's provider status had been changed from in-network to out-of-network, though defendants never informed SEP of this change; and (5) the NovaSys contract remains in place today, as indicated in a letter sent by Mr. Meldrum on February 12, 2018, has never been terminated, and makes SEP a

participating provider for all of the NovaSys contract claims at issue in this action ██████ ███████████████████████████████ (*Id.*, Ex. A, ¶¶ 18, 99, 108, 134-37, 141).  Upon the Court's review of the record, these revelations represent new information that bolster the claims SEP proposes adding through the second amended complaint and demonstrate that SEP did learn new information during the April 2019 depositions.

Finally, the Court finds unconvincing defendants' contentions that the timing of the depositions reflects a lack of diligence on the part of SEP.  SEP served discovery requests on May 2, 2018, and SEP reasonably did not conduct depositions until it had substantially completed written discovery and document review (Dkt. No. 83, at 6).  Rather than file a motion to compel or involve the Court in any discovery disputes, SEP sought to resolve its discovery disputes with defendants outside of court (*Id.*, at 7).  SEP scheduled these depositions in an appropriate manner and on a reasonable schedule, in accordance with the discovery deadline then in place of May 31, 2019 (Dkt. No. 44).  SEP filed the instant motion within weeks of completing the depositions, which does not reflect a dilatory turnaround.  It is true that SEP moved to amend its complaint over five months after the Court's deadline for the amendment of pleadings, but this motion comes within weeks of SEP learning new information at the April 2019 depositions (Dkt. Nos. 44, 60). Such a prompt filing upon learning new information demonstrates appropriate diligence on SEP's behalf based on the facts and circumstances of this case.

Defendants cite three non-controlling cases to argue that SEP's delay is inexcusable due to its lack of earlier discovery motions or activity:  *Escandon v. Los Angeles County*, 584 F. App'x 517 (9th Cir. 2014), *Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235 (11th Cir. 2009), and *Jackson v. Municipality of Selma,* No. CIV.A. 10-0168-WS-B, 2011 WL 245506 (S.D. Ala. Jan. 24, 2011).  In *Escandon*, the district court denied plaintiff's request to modify its scheduling

order, which the district court interpreted as a request for an extension of time to conduct discovery outside of the discovery period. 584 F. App'x at 519. The Ninth Circuit upheld this denial because the moving party failed to conduct any discovery, compel any discovery responses, or file the motion before the final permissible day to do so. *Id.* at 519-20. Here, SEP clearly conducted discovery prior to these depositions in the form of written discovery and document review, and SEP was able to hold depositions well before the discovery deadline. Unlike in *Escandon*, SEP conducted appropriate discovery which led to new information sufficient to supply good cause for SEP's motion in accordance with Rule 16(b).

*3M* appears more on point but still readily distinguishable from the instant case. 575 F.3d 1235. In *3M*, plaintiff moved to amend its complaint five months after the deadline to amend pleadings, a month after both parties had filed their initial briefs in support of their motions for summary judgment, and a few weeks after fact discovery had been closed. *Id.* at 1242. The district court denied this motion, and the Eleventh Circuit upheld this denial. *Id.* The Eleventh Circuit noted that plaintiff "did not serve its first [relevant] interrogatory . . . until three months after the deadline to amend pleadings had passed." *Id.* Further, the Eleventh Circuit found that the plaintiff waited "to file a motion to amend its complaint with information that it had known over a month before when it filed a motion for summary judgment." *Id.* In fact, the allegations plaintiff sought to include in its amended complaint already appeared in its motion for summary judgment. *See id.* at 1242-43. Here, SEP served its discovery requests on May 2, 2018, six months before the amendment deadline (Dkt. No. 83, at 6-7). And again, SEP credibly claims that it did not know the information it seeks to include in its proposed second amended complaint until after the completion of the April 2019 depositions.

In *Jackson*, plaintiff sought to add two additional police officers to his complaint as defendants after the deadline for amending pleadings. 2011 WL 245506, at *1. The district court stated that plaintiff had already received the names of these two officers and the fact that one of the officers was the arresting officer through initial disclosures and discovery. *Id.*, at *2. Nevertheless, "the plaintiff did not seek to add the officers as defendants" and "did not take their depositions until . . . the penultimate day of the discovery period." *Id.* Plaintiff offered no explanation for "why he delayed until the end of discovery—and some three months after the amendment period expired—to depose them." *Id.* The district court held that "plaintiff's failure to explain his delay preclude[d] him from establishing good cause" to amend his complaint. *Id.* The facts are different in SEP's case. SEP contends that it did not receive adequate information regarding the potential applicability of the NovaSys contract in initial disclosures, SEP deposed the relevant witnesses despite some discovery disputes with defendants nearly two months before the Court's discovery deadline, and the depositions occurred when they did due to SEP's need to complete written discovery and document review and to sort out SEP's discovery disputes with defendants.

Defendants also argue that the Eighth Circuit rejected a similar argument that a defendant's failure to comply with discovery requests delayed depositions in *Barstad v. Murray County*, 420 F.3d 880, 883 (8th Cir. 2000). In *Barstad*, plaintiffs moved to amend their complaint after the deadline to amend pleadings had passed, and the district court denied their motion due to failure to show good cause. *Id.* The Eighth Circuit agreed, expressly stating that plaintiffs' motion for leave to amend the complaint was properly denied since plaintiffs "knew of the claims they sought to add when they filed the original complaint" and that "the claims did not hinge on the concluding depositions." *Id.* Here, the record suggests, as detailed above, that SEP did not know of the claims

they now seek to add when they filed the original complaint, and these new claims hinge upon the depositions SEP conducted.

Thus, for the foregoing reasons, the Court finds SEP has demonstrated good cause requisite to amend its complaint past the scheduling order's deadline for amending pleadings.

### B.    Prejudice

SEP straightforwardly asserts that there is no prejudice to defendants (and the to-be-named defendants) that cannot be cured by the issuance of a new scheduling order (Dkt. No. 60, ¶ 18). To guard against any such potential prejudice, however, SEP agrees to the re-opening of all previously expired deadlines to ensure that both sides are fully able to litigate the newly asserted claims (*Id.*).  For their part, defendants argue that SEP's proposed new claims would prejudice them by causing lengthy delay and greatly expanding the scope of the case less than three months before the scheduled trial date (Dkt. No. 80, at 15-17).

On the issue of delay, the parties jointly moved to continue all scheduling order deadlines and for extension of motion deadline, and defendants filed an unopposed amended motion for extension of motion deadline (Dkt. Nos. 88, 89, 91).  In response, the Court continued all scheduling order deadlines, removed this matter from the Court's trial calendar for the week of December 16, 2019, and suspended all other pretrial deadlines set forth in the second amended final scheduling order (Dkt. No. 92).  Since the parties themselves moved to continue all deadlines in the final scheduling order, asked the Court to set new scheduling order deadlines upon determinations of the motions pending before the Court—including the instant motion—and moved to extend the motion deadline, the Court is unconvinced that any delay stemming from a grant of this motion would unduly prejudice defendants at this stage of the litigation.  The parties jointly asked for a delay, and the Court granted their request.  All parties identified in their most

recent status reports discovery that remains necessary, even under the currently pending first amended complaint (Dkt. Nos. 66, 70).  Additionally, the Court's order continuing all scheduling order deadlines eliminates the time pressure of expanding the scope of the case close to the scheduled trial date.

On the issue of expanded scope, SEP does acknowledge that granting leave to amend will likely require additional discovery and amended or supplemental expert disclosures from both parties (Dkt. No. 83, at 9-10).  SEP asserts, though, that the depositions and discovery already taken provide much of the support that SEP needs for its new claims, and SEP does not currently intend to repeat any discovery or depositions already taken (*Id.*, at 10).  SEP also states that many relevant facts and documents related to its new claims require no discovery at all since defendants are already in possession of most of the relevant facts and documents related to many of the new claims (*Id.*).

The potential for expanded scope weighs in favor of permitting the amendment here since "[t]he elements required for a contract are identical whether they are expressly stated or implied in fact." *FutureFuel Chem. Co. v. Lonza, Inc.*, No. 1:11CV00061 SWW, 2012 WL 4049267, at 11 (E.D. Ark. Sept. 13, 2012) (citing *K.C. Props. of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC*, 280 S.W.3d 1, 13 (Ark. 2008)); *see also Steed v. Busby*, 593 S.W.2d 34, 38 (Ark. 1980)  ("A contract implied in fact does not describe a legal relationship different from that created by an express contract.").  Arkansas law features the same requirements for an express contract as it does for an implied-in-fact contract:  "(a) competent parties; (b) subject matter; (c) legal consideration; (d) mutual agreement; (e) mutual obligations." *Berry v. Cherokee Vill. Sewer, Inc.*, 155 S.W.3d 35, 38 (Ark. Ct. App. 2004) (citations omitted).  Thus, the legal arguments remain much the same for SEP's express contract claim as for SEP's implied-in-fact contract claim.

The difference between express contracts and implied-in-fact contracts lies in the manner of proof. "An implied contract is proven by circumstances showing the parties intended to contract or by circumstances showing the general course of dealing between the parties." *Busby*, 593 S.W.2d at 38 (citation omitted); *see also Cobren v. Anderson*, 385 S.W.3d 319, 325 n.2 (Ark. Ct. App. 2011) ("An implied-in-fact contract is one that is inferred from the acts of the parties or from circumstances demonstrating their intention." (citing *Pettus v. McDonald*, 36 S.W.3d 745 (Ark. 2001)). An express contract, conversely, "is proved by showing that the parties to the contract had a written or oral agreement that imposed obligations on each party." *Pettus*, 36 S.W.3d at 748. From a factfinding standpoint, SEP asserts that the depositions and discovery already taken provide much of the support that SEP needs for its express contract claims, and SEP does not currently intend to repeat any discovery or depositions already taken (Dkt. No. 83, at 10). The Court also notes that the alleged express contract in question already exists in the record (Dkt. No. 80, Ex. 1). Thus, the Court is not persuaded that the addition of SEP's express contract claims would greatly expand the scope of the case.

Similarly, the Court does not see much prejudice to defendants in expanding the scope of the case by adding SEP's proposed claims alleging fraud related to defendants' concealment, fraud, and deceit in regard to the contract between SEP and NovaSys, violations of the AITPA and the ADTPA, piercing the veil of the currently named defendants and NovaSys to ensure that Centene is held liable, or extending the time period for all claims to the limits of the applicable statute of limitations (Dkt. No. 60, ¶¶ 9(d)-(f)). Since SEP maintains that no great additional discovery will be required to support its claims, the expanded scope argument seems limited to the fact that the parties may face a time crunch, that the parties will have to litigate new issues, and that defendants will have to defend against new lines of attack. The Court resolved the time crunch issue with its

order continuing scheduling order deadlines, and again, at this stage of the litigation, the Court is inclined to permit SEP to make its argument that this reality stems from alleged behavior by defendants of which SEP learned *via* new facts testified to during the April 2019 depositions (Dkt. Nos. 60, ¶¶ 3-7; 92). The Court declines to find undue prejudice in expanding the scope to include claims based on this alleged concealing or fraudulent behavior, especially given the overall procedural posture of this case.

Defendants rely on *Kmak* and *Kozlov* to substantiate their position that these new claims would expand the scope of the case to the point of prejudice, but such reliance is misguided. In *Kmak*, plaintiff sought leave to file a third amended complaint asserting new causes of action seven months after the deadline to amend pleadings and nearly three years after initiating the lawsuit. 873 F.3d at 1034. The district court denied plaintiff's motion to amend, in relevant part, because it "would greatly expand the scope of [the] case, extending it to transactions that have not been at issue previously and raising claims that have not been previously advanced," and the Eighth Circuit upheld that denial. *Id.* In *Kmak*, however, the Eight Circuit found that plaintiff's "new claims were legal variations on a theme the parties had been litigating for years." *Id.* The fact that these claims were mere legal variations on already-litigated claims, coupled with plaintiff's failure to "establish the diligence and good cause needed to extend [the] litigation indefinitely on the eve of the court's decision to grant summary judgment," led the Eighth Circuit to uphold the district court's denial. *Id.* at 1035. Conversely, SEP's claims alleging fraud related to defendants' concealment, fraud, and deceit in regard to the contract between SEP and NovaSys, violations of the AITPA and the ADTPA, and piercing the veil of the currently named defendants and NovaSys to ensure that Centene is held liable are not "legal variations" on the dispute SEP and defendants have been litigating (Dkt. No. 60, ¶¶ 9(d)-(f)). Unlike in *Kmak* these claims reflect new allegations

23

of wrongdoing and obfuscation on defendants' behalf, and these claims are coupled with demonstrated diligence and good cause as discussed previously in this Order.

In *Kozlov*, plaintiff moved for leave to amend his complaint approximately two months before trial on the basis that "he discovered evidence of which he was previously unaware but which was known to [defendant], the nonmoving party." 818 F.3d at 394. The party seeking to amend the complaint "gave no cause or valid reason for failing to amend the complaint earlier," leading the district court to deny the motion. *Id.* at 395. In particular, plaintiff "did not act diligently in reviewing the evidence and making the motion to amend his complaint," given that with the exception of one affidavit, plaintiff "had access to almost all of the [relevant] evidence . . . at least eighteen months before the motion to amend." *Id.* Further, plaintiff had records regarding critical medical evidence that supported the basis of his motion to amend "for three years before he filed the motion to amend." *Id.* It is also true that granting plaintiff's motion "would have required more discovery and new experts because negligent hiring was never alleged before [the] request to amend," but the Eighth Circuit seemed rather clear that the lack of a good-cause showing guided the decision to uphold the district court. *Id.* Here, SEP has sufficiently demonstrated diligence and good cause, and the Court concludes that the timing of SEP's motion is not comparable to moving for leave to amend a mere two months before trial when the *Kozlov* plaintiff clearly had ample evidence and opportunity to make such allegations at least a year and a half earlier.

Further, the Court notes that a contrary conclusion—that defendants would be prejudiced by adding these other claims—would seem to *reward* defendants for their alleged concealment, fraud, and deceit, if such actions can be proved. Adopting defendants' view would lead to the conclusion that it would prejudice a party to have to defend against claims of concealment and

24

fraud once that party's potentially concealing and fraudulent behavior has been unearthed by plaintiff.  Siding with defendants here would have the perverse outcome of incentivizing a party to conceal critical facts until after the deadline to amend pleadings, if the Court were to bar any post-deadline amendments because defendants successfully concealed those facts through the deadline to amend pleadings.

Finally, the Court mentions briefly that extending the time period for all claims to the limits of the applicable statute of limitations, as SEP seeks to do, will not result in undue prejudice to defendants based on the Court's analysis here (Dkt. Nos. 60, Ex. A, ¶ 9(g); 83, at 11).  As SEP correctly notes, SEP's new claims have a longer statute of limitations than the claims originally asserted in SEP's complaint in this matter (Dkt. No. 83, at 11).  For example, the NovaSys contract is an express written contract, and the statute of limitations under Arkansas law for written contract claims is five years.  *See* Ark. Code Ann. § 16-56-111(a).  The Court has determined that there is good cause to permit SEP to amend its complaint.  Granting SEP's motion for leave to amend, therefore, will inherently expand the time frame and claims at issue in this case.  Given this reality, expanding the implied-in-fact and implied-in-law contract claims to the limits of the statute of limitations will have no additional effect on defendants since SEP's express contract claims already encompass this longer time frame.

Thus, for the foregoing reasons, the Court finds SEP has demonstrated a lack of prejudice to defendants in amending its complaint past the scheduling order's deadline for amending pleadings.

## C.    Futility

Finally, the parties disagree regarding the potential futility of some of SEP's proposed amendments.  SEP highlights, and the Court notes, that defendants do not make a futility argument

with respect to the breach of express contract claim (Dkt. No. 83, at 12).  Instead, defendants assert only that granting leave to amend would be futile for SEP's proposed fraud, statutory trade practices, and veil piercing claims (Dkt. No. 80, at 17).  SEP states that each of these counts asserts a plausible claim for relief (Dkt. No. 83, at 13).  These claims represent Counts V, VI, and VII in SEP's proposed amended complaint (Dkt. No. 60, Ex. A, ¶¶ 186-217).  Since the parties discuss each claim in turn, the Court will do the same.  The Court stresses that it is deciding "whether [SEP] is entitled to offer evidence to support the claims," not "whether [SEP] will ultimately prevail" on them.  *Scheuer*, 416 U.S. at 236.

### 1.      Count V—Fraud

SEP seeks to add a claim for fraud related to defendants' alleged concealment, fraud, and deceit regarding the contract between SEP and NovaSys (Dkt. No. 60, ¶ 9(d)).  For the fraud count, SEP alleges that when SEP first approached defendants in an attempt to negotiate a participating provider agreement related to Ambetter, defendants had a duty to disclose, at a minimum, that the NovaSys contract remained in force and was the reason that SEP was shown as a participating provider in Centene's computer system (*Id.*, Ex. A, ¶ 187).  Instead, SEP alleges that the employees and officers of Centene were concealing the facts and provider contract from SEP and altering defendants' records to cover up the fraud (*Id.*, ¶ 188).  SEP alleges that defendants obfuscated the entity or entities responsible for Ambetter in Arkansas and the method for determining reimbursement rates for services provided to Ambetter patients and failed to inform SEP that they were creating the Ambetter product or that Ambetter patients would be accessing a NovaSys network despite having within their knowledge that the NovaSys contract remained in force and showing SEP in the Centene system as a participating provider for Ambetter (*Id.*, ¶ 189).  SEP alleges that defendants intentionally withheld this information and refused to provide a copy of the

26

NovaSys contract, which constituted a false representation of material fact, and that defendants knew, based on its repeated requests, that SEP did not know that the NovaSys contract remained in force (*Id.*, ¶¶ 190-191). SEP claims that defendants refused to disclose key facts regarding the NovaSys contract and its applicability to SEP's contract claims and that SEP was justified in assuming that the NovaSys contract had no applicability to the contract claims at issue (*Id.*, ¶¶ 192-93). Ultimately, SEP alleges that defendants' concealment of these facts allowed defendants to reimburse SEP at lower rates throughout their relationship, delayed and impaired SEP's ability to collect the amounts owed it, and caused SEP to incur additional attorneys' fees and expenses in investigating this issue (*Id.*, ¶ 194).

Defendants claim that SEP fails to state a fraud claim because Count V of SEP's proposed second amended complaint is based on allegations that all defendants failed to perform contractual obligations under the NovaSys contract and that defendants erroneously, according to SEP, believed the NovaSys contract was inapplicable to the relationship between SEP and Celtic (Dkt. No. 80, at 17). Defendants also contend that, of defendants named in the proposed second amended complaint, only NovaSys was a party to the NovaSys contract (*Id.*). Defendants conclude their argument by expressing confidence that they will prevail on SEP's proposed breach of contract claim, if the Court permits SEP to file its proposed second amended complaint, and arguing that in no event should the Court permit SEP to assert fraud allegations relating to the same conduct that allegedly constitutes breach of an express contract (*Id.*, at 17-18).

SEP replies that the breach-of-contract claim relates to defendants' failure to fulfill their obligations under the NovaSys contract by simply failing to reimburse SEP at the rate specified by the NovaSys contract (Dkt. No. 83, at 13-14). SEP maintains that the fraud claim, however, stems from defendants' calculated scheme to hide the NovaSys contract from SEP and prevent SEP from

learning the true facts of defendants' breach—in other words, the fraud claim seeks to hold defendants liable for their alleged coverup of the breach-of-contract claim rather than the alleged underlying breach itself (*Id.*, at 14).  Though the claims are related, according to SEP, they target separate behaviors (*Id.*).

On this count, the Court agrees with SEP at this stage of the litigation.  The conduct that SEP alleges constitutes fraud certainly relates to the express contract claims at issue, but the alleged fraudulent behavior differs significantly from the alleged breach of express contract (Dkt. No. 60, Ex. A, ¶¶ 144-154, 186-197).  At its core, SEP's breach of express contract claim alleges that the NovaSys contract is and at all relevant points has been a contract between SEP and NovaSys and that defendants have failed and refused to reimburse SEP at a rate of 75% of billed charges for the NovaSys contract claims at issue in this action which constitutes a material breach of the NovaSys contract (*Id.*, ¶¶ 145, 151).  This claim of breach clearly differs from the claims of fraud laid out above and in the proposed amended complaint itself (*Id.*, ¶¶ 186-197).

Additionally, in order "to state a cause of action for breach of contract [under Arkansas law] the complaint need only assert the existence of a valid and enforceable contract between the plaintiff and defendant, the obligation of defendant thereunder, a violation by the defendant, and damages resulting to plaintiff from the breach."  *Ballard Grp., Inc. v. BP Lubricants USA, Inc.*, 436 S.W.3d 445, 450 (Ark. 2014) (citing *Perry v. Baptist Health*, 189 S.W.3d 54 (Ark. 2004)).  To prove fraud under Arkansas law, the Supreme Court of Arkansas has explained that a plaintiff must prove the following five elements:

> (1) that the defendant made a false representation of material fact; (2) that the defendant knew that the representation was false or that there was insufficient evidence upon which to make the representation; (3) that the defendant intended to induce action or inaction by the plaintiff in reliance upon the representation; (4) that the plaintiff justifiably relied on the representation; and (5) that the plaintiff suffered damage as a result of the false representation.

*Wal-Mart Stores, Inc. v. Coughlin*, 255 S.W.3d 424, 432 (Ark. 2007) (citing *Bomar v. Moser*, 251 S.W.3d 234 (Ark. 2007)).  These requirements obviously differ from both a factual and legal standpoint.  The Court sees no issue or redundancy with permitting SEP to proceed with the distinct causes of action of breach of express contract claims and fraud claims at this stage of the litigation. *See also Ultracuts Ltd. v. Wal-Mart Stores, Inc.*, 33 S.W.3d 128 (Ark. 2000) (determining breach of contract and fraud claims permissible under Arkansas law); *Halsey Co. v. Bonar*, 683 S.W.2d 898 (Ark. 1985) (same); *Wingfield v. Page*, 644 S.W.2d 940 (Ark. 1983) (same).

Considering the grounds provided in the proposed amended complaint, the Court finds that SEP "states a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, and "reache[s] the legal conclusion that the amended complaint could [ ] withstand a motion to dismiss under Rule 12(b)(6)," *Zutz*, 601 F.3d at 850 (citing *Cornelia I. Crowell*, 519 F.3d at 782).  SEP plausibly states a fraud claim against defendants, and the Court finds that granting SEP leave to amend to include this proposed claim would not be futile.

2.    **Count VI—Violation Of The Arkansas Insurance Trade Practices Act And The Arkansas Deceptive Trade Practices Act**

SEP also seeks to add claims for violation of the AITPA and the ADTPA (Dkt. No. 60, Ex. A, ¶¶ 198-212).  SEP notes that the AITPA prohibits any unfair or deceptive act or practice in the business of insurance, with more details included throughout the statute as to what behavior is specifically targeted (Dkt. No. 60, Ex. A, ¶¶ 199-203).  Ark. Code Ann. §§ 23-66-205; 206(6)-(7); 206(13)(A), (B), (F), (H), (J); 215.  SEP also notes that the ADTPA prohibits "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade," and asserts that violation of each of the cited portions of the AITPA would also violate the ADTPA under this catch-all provision (Dkt. No. 60, Ex. A, ¶ 204).  Ark. Code Ann. § 4-88-107(10).  SEP

asserts that the ADTPA prohibits a variety of deceptive, fraudulent, concealing, or misleading behavior and bestows a private right of action upon an individual who suffers an actual financial loss as a result of her reliance on the use of one of these unlawful behaviors (Dkt. No. 60, Ex. A, ¶¶ 205-06).   Ark. Code Ann. §§ 4-88-108; 113(f)(1)(A).   SEP then alleges that defendants' obfuscation of the entity or entities responsible for the Ambetter product and reimbursements in Arkansas and the method for determining the rate of reimbursement for services provided to Ambetter patients, as well as defendants' fraud, deceit, and concealment related to the NovaSys contract, violated the cited provisions of the AITPA and the ADTPA (Dkt. No. 60, Ex. A, ¶ 207). SEP asserts that it suffered an actual financial loss as a result of its reliance on these practices of defendants in the specific form of defendants reimbursing SEP at lower rates than those provided in the NovaSys contract, delaying and impairing SEP's ability to collect the amounts due to it, and causing SEP to incur additional attorneys' fees and expenses in investigating this issue (*Id.*, ¶ 208). In addition, SEP states that defendants' obfuscation, concealment, fraud, and deceit were intentionally pursued for the purpose of causing harm to SEP, or, at a minimum, defendants knew or should have known that their conduct would naturally and probably result in harm to SEP, yet they continued such conduct in disregard of the consequences (*Id.*, ¶ 210).

In response, defendants state these statutory claims fail as a matter of law (Dkt. No. 80, at 18).  Defendants assert that it is well settled that no private right of action exists under the AITPA, leaving SEP lacking standing to assert a claim for violation of the AITPA (*Id.*).  As to the ADTPA, defendants state that the elements of an ADTPA cause of action are:   (1) a deceptive consumer-oriented act or practice which is misleading in a material respect and (2) injury resulting from such act (*Id.*).   Therefore, defendants allege that SEP's ADTPA claim fails as a matter of law because the allegedly deceptive acts are not consumer-oriented (*Id.*, at 19).   Instead, defendants assert that

30

this is a financial dispute between a health care provider and an insurance company, and SEP has not alleged that this dispute has an impact on consumers (*Id.*).  Further, defendants claim that, at most, this is merely an ordinary breach of contract claim, not a deceptive act that brings defendants' alleged wrongs within the scope of the ADTPA (*Id.*, 19-20).

In reply, SEP states that it has not asserted a private right of action established under the AITPA but rather has contended that defendants' violation of the AITPA is a separate violation of the ADTPA (Dkt. No. 83, at 14).  SEP maintains that a private right of action certainly exists under the ADTPA and that defendants' alleged violations of the AITPA may be pursued under that private right of action (*Id.*, at 14-16).  SEP also states that ADTPA's definition of a "person" includes all variety of business entities, indicating that, although the violation must be a "consumer-oriented act or practice," a "person who suffers an actual financial loss," *i.e.*, one who may sue for violation of the ADTPA, need not be a consumer (*Id.*, at 16).

SEP represents that the proposed second amended complaint expressly alleges that defendants' misleading conduct played  a part in the parties' business dealings or in their business dealings with their customers, including directly threatening consumers—namely, Ambetter patients (*Id.*, at 17).  Specifically, SEP maintains that the NovaSys contract, if enforceable, would prevent SEP from billing Ambetter patients for the difference between SEP billed charges and the allowed amounts set by defendants (Dkt. No. 80, Ex. A, ¶ 40).  In other words, SEP maintains that, by claiming the NovaSys contract does not apply here, defendants have exposed their insureds to "balance bills." (Dkt. No. 83, at 17).  SEP maintains that generally it does not balance bill patients when SEP is not in-network and that it did not do so here (*Id.*, at 17 n.4).  Finally, SEP claims that it has sustained financial loss based on its reliance on defendants' consumer-directed public statements, including websites, marketing materials, business cards, explanations of benefits sent

to Ambetter patients, explanations of payments sent to providers, provider manuals, legal documents, and public announcements (*Id.*, at 17-18).  All told, SEP maintains that it has plausibly alleged the "consumer-oriented" acts required for a claim under the ADTPA (*Id.*, at 18).

As an initial matter, the Court agrees with defendants that no private right of action exists under the AITPA (Dkt. No. 80, at 18).  *See Design Prof'ls Ins. Co. v. Chi.  Ins. Co.*, 454 F.3d 906, 911-12 (8th Cir. 2006); *Williams v. State Farm Mut. Auto. Ins. Co.*, No. 5:10CV00032 JLH, 2010 WL 2573196, at *3 n.6 (E.D. Ark. June 22, 2010) (citing Ark. Code Ann. 23-66-202(b)); *Columbia Mut. Ins. Co. v. Home Mute. Fire Ins. Co.*, 47 S.W.3d 909, 913 (Ark. 2001)).  Because SEP lacks standing to bring any claim for a violation of the AITPA under the AITPA itself, the Court considers whether SEP alleges a plausible claim under the ADTPA, which does establish a private right of action.  *See* Ark. Code. Ann. § 4-88-133(f)(1)(A).

The parties rightly identify the elements of an ADTPA cause of action as "(1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) injury resulting from such act."  *Skalla v. Canepari*, 430 S.W.3d 72, 82 (Ark. 2013) (citing Ark. Code Ann. § 4-88-113(f)).  Both the Eighth Circuit and the Supreme Court of Arkansas have affirmed the dismissal of ADTPA claims where the claims at issue did not involve consumer-oriented acts or practices.  *See Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 963 (8th Cir. 2015) ("The collection and dissemination of license-plate data prohibited by the Reader System Act is not consumer-oriented, and thus does not constitute an unconscionable act subject to the attorney general's enforcement authority under the [ADTPA]."); *Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 822 (8th Cir. 2015) ("The ADTPA, as interpreted by the Arkansas courts, does not apply to deception and fraud claims regarding business between a manufacturer and its distributor when consumers are not deceived or defrauded."); *Apprentice Info. Sys., Inc. v.*

*DataScout, LLC*, 544 S.W.3d 536, 539 (Ark. 2018) (finding circuit court erred in finding that plaintiff was a consumer for purposes of the ADTPA, where plaintiff and defendant were "competitors in the market of selling counties' public data" and where plaintiff alleged that defendant interfered with its business expectancy); *Skalla*, 430 S.W.3d at 82 (finding no ADTPA violation because the alleged deceptive practice was not consumer-oriented, as the disputed act or practice "involved farming rather than consumer-oriented acts"). Further, "[a] private cause of action [under ADTPA] does not arise absent a showing of both a violation and resultant damages." *Skalla*, 430 S.W.3d at 82 (citing *Wallis v. Ford Motor Co.*, 208 S.W.3d 153 (Ark. 2005)). Also relevant here, "[t]he ADTPA 'does not state that business entities or non-consumers cannot utilize its provisions as a basis for recovery,' and, 'thus, one does not have to be a consumer to recover under the ADTPA.'" *Electrocraft Ark., Inc. v. Super Elec. Motors, Ltd.*, No. 4:09cv00318 SWW, 2009 WL 5181854, at *7 (E.D. Ark. Dec. 23, 2009) (quoting *Valor Healthcare, Inc. v. Pinkerton*, No. 08-6015, 2008 WL 5396622, at *3 (W.D. Ark. Dec. 23, 2008)).

The crux of this claim is whether the allegedly deceptive acts are "consumer-oriented." In support of its claim, SEP cites the Court to *Baptist Health v. Murphy*, 228 S.W.3d 800 (Ark. 2006), in which the Supreme Court of Arkansas upheld the circuit court's determination regarding an Arkansas Deceptive Trade Practices Act claim involving two competitors. In *Murphy*, cardiologists who were direct or indirect owners of or investors in another hospital that competed with Baptist Health sued Baptist Health over its credentialing policy, which the cardiologists claimed denied them staff appointments and clinical privileges as a result of their status as owners of or investors in a competitor. The circuit court determined, and the Arkansas Supreme Court upheld, that Baptist Health's "credentialing policy [wa]s intended to require [the cardiologists] to either divest themselves of their ownership interests in [the competing hospital] or to have their

33

relationships with their patients, who are required to use [Baptist Health's] facilities, disrupted or terminated." 226 S.W.3d at 811. The Arkansas Supreme Court upheld the circuit court's determination "that Baptist's use of the patients as pawns in its economic chess game with a facility it deems a competitor was unconscionable, and therefore unlawful under this provision" and that, through its exclusive provider contracts, Baptist Health engaged in unconscionable conduct "by the use of its power to disrupt the relationships between patients, who are at Baptist's mercy, with their physicians." *Id.* (internal quotations omitted).

In further support of its ADTPA claim, SEP alleges that defendants' conduct violated the AITPA, and SEP specifically cites in its proposed second amended complaint language from the AITPA that it contends defendants violated through consumer-directed public statements, including websites, marketing materials, business cards, explanations of benefits sent to Ambetter patients, explanations of payments sent to providers, provider manuals, legal documents, and public announcements (Dkt. No. 80, Ex. A, ¶¶ 199-203). A state's public policy is best evidenced by its statutes. *See Guaranty Nat'l Ins. v. Denver Roller, Inc.*, 854 S.W.2d 312, 318 (Ark. 1993). An insurance provision that is in accordance with a statute cannot run contrary to public policy. *Majors v. Am. Premier Ins. Co.*, 977 S.W.2d 897, 900 (Ark. 1998) (citing *Shelter Gen. Ins. Co. v. Williams*, 867 S.W.2d 457 (Ark. 1993)).

Based on SEP's allegations, defendants represented SEP to Ambetter patients as a "participating provider" and as a "non-participating provider" at various times and compensated SEP for services rendered to Ambetter patients inconsistently (Dkt. No. 80, Ex. A., ¶¶ 69-77). SEP concedes that its physicians are obligated by federal law to treat any individual presenting to the emergency department and to provide stabilizing treatment to any such individual with an emergency medicine condition, regardless of the individual's insurance coverage or ability to pay

(Dkt. No. 80, Ex. A, ¶¶ 14-16).  SEP alleges that defendants' conduct with respect to the NovaSys contract directly threatened the Ambetter patients as consumers by exposing them to "balance bills," although SEP immediately follows up that argument with a clarification that SEP did not "balance bill" Ambetter patients for the claims at issue in this case (Dkt. No. 83, at 17, 17 n.4). SEP does not allege that this dispute has had any other financial impact on any consumer, but SEP alleges that this dispute has had a financial impact on it.

The Court finds that, based on the authorities cited and reviewed, SEP has sufficiently alleged a plausible claim under the ADTPA based on defendants' alleged conduct and provisions of the AITPA and that the amending of SEP's complaint to include these claims would not be futile at this stage of the proceeding.

### 3.    Count VII—Piercing The Corporate Veil

Finally, SEP seeks to add a piercing the corporate veil count to its proposed complaint (Dkt. No. 60, Ex. A, ¶¶ 213-217).  In this claim, SEP alleges that Centene so controls and dominates the other defendants in this action as to render them a single business, to the point that the other defendants are merely alter egos of Centene (*Id.*, ¶¶ 214-215).  SEP claims that the corporate veils of the other defendants should be pierced to prevent a substantial injustice and to ensure that Centene is held liable for the damages caused by the actions and omission of its employees, even if made on behalf of one of the other named defendants (*Id.*, ¶ 216).  SEP seeks a joint and several judgment against Centene for all relief or damages awarded against any of the other defendants (*Id.*, ¶ 217).

Defendants assert that SEP's veil-piercing claim fails as a matter of law (Dkt. No. 80, at 20).  Defendants claim that SEP has not alleged any facts that would justify piercing the corporate veil or shown why piercing the corporate veil is necessary in order to prevent injustice (*Id.*, at 21).

Defendants state that Celtic has always conceded that it is the properly named defendant in this case and that SEP has failed to state any valid reason why this case should not proceed solely against Celtic (*Id.*).

In reply, SEP reiterates the following detailed allegations in support of its claim: (1) the other defendants have no employees; (2) everyone working on behalf of the other defendants is an employee of Centene; (3) every action, omission, and decision giving rise to this suit was made or taken by an employee/officer of Centene, acting in the course and scope of his or her employment for Centene; (4) Centene dictates all of the business decisions for the other defendants, including marketing of the Ambetter product in Arkansas and public statements made regarding the Ambetter product in Arkansas; (5) Centene sets policies for the negotiation of contracts with participating providers in Arkansas, including the factors that must be considered in determining the reimbursement rates for those contracts and the upper and lower ranges for the reimbursement rates in such contracts; (6) employees of Centene actually negotiate the participating provider contracts in Arkansas for services provided to Ambetter patients; (7) Centene sets policies for determining the rate of reimbursement for non-participating providers of emergency medicine services in Arkansas; (8) Centene actually makes the determinations of the rates of reimbursement for non-participating providers of emergency medicine services in Arkansas and dictates the rates to the other defendants in Arkansas; (9) Centene provides the claims-processing centers for all services provided to Ambetter patients in Arkansas; (10) Centene provides all computer systems used in negotiating rates with participating providers, setting the rates for non-participating providers, and processing all claims for services provided to Ambetter Patients in Arkansas; and (11) to the best of SEP's knowledge and belief, defendants other than Centene exist in name only, and those defendants generally do not even use their legal names when conducting business in

36

Arkansas (Dkt. Nos. 60, Ex. A, ¶¶ 18-28; 83, at 20-21). SEP also alleges that Centene would be a party to the second amended complaint with or without the veil-piercing claim as it was Centene employees, acting in the course and scope of their employment, who committed a fraud against SEP (Dkt. Nos. 60, Ex. A, ¶ 195; 83, at 22).

"State law is viewed to determine whether and how to pierce the corporate veil." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003) (citing *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 638 (8th Cir. 1975)). Under Arkansas law, "[a] court pierces a corporate veil when it disregards a corporate entity to impose individual liability on its shareholders." *Bradley Timberland Res. v. Bradley Lumber Co.*, 712 F.3d 401, 406 (8th Cir. 2013) (citing *Anderson v. Stewart*, 234 S.W.3d 295, 296 (Ark. 2006)). "Arkansas courts have stated that the doctrine of piercing the corporate veil is founded in equity and is applied when the facts warrant its application to prevent injustice." *Epps*, 327 F.2d at 649 (citations omitted). "The conditions under which the corporate entity may be disregarded or looked upon as the alter ego of the principal stockholder vary according to the circumstances of each case." *Id.* (citing *Humphries v. Bray*, 611 S.W.2d 791, 793 (Ark. Ct. App. 1981); *Winchel v. Craig*, 934 S.W.2d 946, 950 (Ark. Ct. App. 1996)). "While some cases have stated that the doctrine is applicable only if the corporate structure is illegally or fraudulently abused, the Arkansas Supreme Court has rejected the proposition that this requires a specific finding that a corporation is being used to promote fraud [in *Arkansas Bank and Trust Company v. Douglass*, 885 S.W.3d 863 (Ark. 1994)]." *Tang v. Northpole Ltd.*, 314 F.R.D. 612, 619 (W.D. Ark. 2016) (internal quotations and citations omitted).

On the veil-piercing count, the Court finds that SEP has submitted "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 570).  The Court notes that a corporate veil-piercing claim is inherently a fact-intensive and fact-specific inquiry, and the Court acknowledges that "[p]iercing the fiction of a corporate entity should be applied with great caution."  *Epps*, 327 F.2d at 649 (citing *Banks v. Jones*, 390 S.W.2d 108, 111 (Ark. 1965)).  However, SEP has highlighted through its allegations the "extraordinary interconnectivity" between Centene and the other defendants, *Tang*, 314 F.R.D. at 620, and the Court finds that SEP has made a facially plausible corporate veil-piercing claim.

**IV.    Conclusion**

For the foregoing reasons, the Court grants SEP's sealed motion for leave to file second amended complaint (Dkt. No. 60).  The Court directs SEP to file its second amended complaint within ten days of the entry of this Order.

It is so ordered this 9th day of December, 2019.

Kristine G. Baker
United States District Judge