IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

SOUTHEASTERN EMERGENCY
PHYSICIANS, LLC                                                                    PLAINTIFF

v.                          CASE NO. 4:17-CV-00492 BSM

ARKANSAS HEALTH &
WELLNESS HEALTH PLAN, INC., *et al.*                              DEFENDANTS

**BRIEF IN SUPPORT OF MOTION FOR ENTRY OF JUDGMENT**

### I.     INTRODUCTION

On September 1, 2011, SE Physicians entered the contract at issue, promising to provide medical care to all patients serviced by NovaSys Health's network of providers and promising not to balance bill those patients. SE Physicians made those promises in exchange for the right to be paid 75% of their billed charges within 30 days of receipt of the claims for those services.

For nine years, SE Physicians honored the agreement, faithfully treating all of the patients who purchased insurance from Centene's insurance companies, and refrained from balance billing those patients.

For the first three years, however, the Defendants stalled, delayed and made excuse after excuse about the check being in the mail before finally paying the agreed rate of 75% of billed charges.  Then, in 2014, Defendants decided to simply stop paying what they had promised to pay, even though they used their contract with SE Physicians every year from 2014 through 2017 as part of their proof to convince the state of Arkansas they had an adequate network of emergency room providers—

2184033-v1

without those annual approvals, Defendants would not have been able to sell the Ambetter product. Yet at the same time Defendants were actively concealing the contract and trying to trick SE Physicians into entering a new agreement with more favorable pricing terms from Defendants' perspective.

But SE Physicians stood firm. And in the end, the jury agreed.

As found by the jury, the September 1, 2011 contract applies to the services provided by SE Physicians to the Ambetter patients at issue in this case.

The time for dodging, delaying, concealing and avoiding is now over. Mr. Meldrum was right all along.[1]

> Michael:
>
> You may be out today but I wanted to respond to your note. I was out last week and trying this week just to keep my head above water.
>
> Is there a listing of claims you could forward to me to review? I could at least see what's happening. **Our arrangement is so simple I can't believe it can't be pretty straight forward to get it fixed.**
>
> Feel free to call me next week if necessary.
> Thanks
>
> Bryan Meldrum

Now that the jury has spoken, it's time to square the account as set forth below by awarding SE Physicians the compensatory damages awarded by the jury, their attorneys' fees and expenses, the interest due on the compensatory damages and the costs incurred in prosecuting this case.

---

[1] Plaintiff's Exhibit 10.

## II. ARGUMENT

### A. SE Physicians is entitled to its attorneys' fees and expenses.

The September 2011 contract (at paragraph 7) contains what amounts to a loser-pays provision, obligating the losing side to pay the prevailing party's attorneys' fees and expense arising out of the losing party's "performance of duties" under the Agreement. Here, SE Physicians had to bring suit because the Defendants failed to perform their duties under the agreement; i.e., pay 75% of billed charges in exchange for the services provided.

If Defendants had prevailed and the jury decided the contract did not apply to the Ambetter patients, there is no doubt the Defendants would have sought to recover their fees and expenses under this contractual provision.

Importantly, the loser-pays provision makes an award of fees and expenses mandatory and does not limit or qualify the amounts of fees or types of expenses that are recoverable.[2]

#### 1. *The September 2011 contract expressly entitles SE Physicians to <u>all</u> of its attorneys' fees and expenses.*

"When the parties enter into a written contract that specifically provides for the payment of attorney's fees incurred in the enforcement of the contract, the agreement is enforceable according to its terms, independent of" any statutory allowance of fees. *Worley v. City of Jonesboro*, 2011 Ark. App. 594, at 18, 385 S.W.3d 908, 919 (2011) (*citing Marcum v. Wengert*, 344 Ark. 153, 40 S.W.3d 230 (2001)). "The

---

[2] Note, SE Physicians is also entitled to attorneys' fees under Ark. Code Ann. § 16-22-308. This statute effectively requires proof that the fees incurred and paid were reasonable and necessary in connection with SE Physicians' prosecution of its claims. As set forth above, the accompanying affidavits or declarations of Judy Henry, Eric J.R. Nichols, and Jeffrey Travis, attached to the Motion as Exhibits B, C, and D, demonstrate that standard is easily met here.

use of the word 'shall' in the attorney's fee section of a contract requires a mandatory award of attorney's fees to the prevailing party." *Id.*

Further, when the contract uses a term such as "all" to modify the term "fees" or "costs" in the contract, then there is no requirement that the prevailing party prove that the fees or costs sought were "reasonable," as an Arkansas court "will not read into [the contract] any such qualifying language." *Phi Kappa Tau Hous. Corp. v. Wengert*, 350 Ark. 335, 340, 86 S.W.3d 856, 859 (2002). Nor can expenses and costs be limited to the costs provided under Rule 54 or other law if the term "costs" is modified by a term like "all," rather than a term like "legal." *Id.*

Here, the September 2011 contract provides, "Company shall be responsible for the acts or omissions of its employees or agents which solely and directly result in, or are solely and directly attributable to, any claims, losses or damages including, without limitation, attorney's fees and expenses, related to the performance of duties under this Agreement." (Plaintiff's Exhibit 1, September 2011 Contract, ¶ 7.) Paragraph 7 also contains a corollary provision in favor of the Defendants.

Clearly, SE Physicians' claims in this case were "attributable to the performance of duties under this Agreement," as the essence of any breach-of-contract claim is an allegation that the defendant "did not do what the contract required of it." AMI Civil 2401 (2020 ed.).

Moreover, paragraph 7 uses the mandatory term "shall" and expressly requires an award of "any" "attorneys' fees and expenses, related to the performance of duties under this Agreement." "Any" is synonymous with the term "all" used in the contract

at issue in the *Phi Kappa Tau* case. *See Merriam-Webster Online Dictionary*, "any," *available at* https://www.merriam-webster.com/dictionary/any (defining "any" as "ALL —used to indicate a maximum or whole").

For these reasons, the contract mandates an award of "attorney's fees and expenses" incurred through trial and post-trial prior to any appeals in the amount $1,721,789.90 in fees and $453,852.55[3] in expenses.[4]

As the chart below demonstrates[5], the overwhelming majority of these fees and expenses were incurred in 2020, once the case became focused on the breach of contract claim that was tried to the jury.

| | Fees | | | |
|---|---|---|---|---|
| | HKH | AZA | WLJ | Total |
| post trial | | $12,500 | $12,500 | $25,000 |
| 2020 | $131,278.50 | $488,186.50 | $600,143.50 | $1,219,608.50 |
| 2019 | $0.00 | $0.00 | $255,133.90 | $255,133.90 |
| 2018 | $0.00 | $0.00 | $212,122.50 | $212,122.50 |
| 2017 | $0.00 | $0.00 | $9,925.00 | $9,925.00 |
| Total | $131,278.50 | $500,686.50 | $1,089,824.90 | $1,721,789.90 |

| | Expenses | | | |
|---|---|---|---|---|
| | HKH | AZA | WLJ | Total |
| 2020 | $1,949.56 | $38,982.47 | $5,489.33 | $46,421.36 |
| 2019 | $0.00 | $0.00 | $3,832.42 | $3,832.42 |
| 2018 | $0.00 | $0.00 | $1,893.48 | $1,893.48 |
| Total | $1,949.56 | $38,982.47 | $11,215.23 | $52,147.26 |

Finally, although paragraph 7 allows SE Physicians to recover all of the attorneys' fees it incurred, SE Physicians is not seeking to recover, and has excluded

---

[3] This amount includes $385,086.29 in expenses charged by EconOne and expenses incurred by SE Physicians' witnesses and representatives of $16,619. (*See* Ex. B, Henry Affidavit, ¶ 13; Ex. E, Bristow Declaration, ¶ 11.)
[4] See Exs. B, C, D, Henry, Nichols, and Travis affidavit/declarations.
[5] See Summary, attached to the Motion as Exhibit A.

from the above totals, the $244,502[6] SE Physicians paid to the Baker Donelson and Duane Morris law firms that initially handled this litigation because those two firms played no role in the development or trial of the contract claim that was decided by the jury.

### 2. *SE Physicians is entitled to a conditional award of appellate fees.*

As set forth in the Declaration of Eric Nichols, Exhibit C to the Motion, SE Physicians may incur attorneys' fees responding to any appeals. These fees are equally recoverable under paragraph 7 of the contract. The basis for these conditional fees are set forth in the declaration of Eric Nichols. In essence, Mr. Nichols opines that in the event an appeal is taken to the Eight Circuit, SE Physicians will incur an additional $110,000 in fees, and an additional $44,000 in fees associated with a writ and potential argument before the United States Supreme Court.

For these reasons, SE Physicians is entitled to a conditional award of $144,000 of attorneys' fees related to appeals of this case.

### 3. *SE Physicians' fees and expenses sought were reasonable and necessary.*

Although the loser-pays provision contained in paragraph 7 of the contract does not require the kind of reasonable and necessary analysis required under statutory fee awards, the affidavits of Judy Henry, Eric Nichols, and Jeffrey Travis (attached as Exhibits B, C, and D to the motion) plainly demonstrate that the fees and expenses sought by SE Physicians were reasonable and necessary.

---

[6] See Ex. E, Declaration of Kent Bristow, ¶ 12.

And as set forth above, SE Physicians is not actually seeking recovery of **all** the fees and expenses *it has paid* as a result of the Defendants' failure to comply with the contract.

**B.     SE Physicians is entitled to interest on the underpaid claims.**

Arkansas's Prompt Pay Statute and Rule 43-12 of the Arkansas Insurance Department entitle SE Physicians to 12% interest, running from the sixty-first day after the Defendants' receipt of each claim at issue in this case until each claim is paid in full.[7]

> *1.     SE Physicians is entitled to 12% interest on the underpaid claim amounts.*

Under Arkansas's Prompt Pay Statute, "[a] health carrier shall pay a penalty of twelve percent (12%) per annum for late payment of claims under a health insurance contract pursuant to rules promulgated by the Insurance Commissioner, without necessity for demand for payment by a claimant." Ark. Code Ann. § 23-66-215(a)(1).

Rule 43-12(c) of the Arkansas Insurance Department sets the standard for determining when a late payment triggers the application of interest at the specified 12% annual rate. Ark. Admin. Code § 054.00.43-12. Specifically, under Rule 43-12, "[a] Health Carrier shall pay or deny a clean claim within 30 days after receipt by the Health Carrier if the claim was submitted electronically, or within 45 days after

---

[7] In the alternative, should the Court find the Prompt Pay Statute inapplicable, SE Physicians is entitled to pre-judgment interest at an annual rate of 6%. Ark. Code Ann. § 4-57-101(d); see also *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 868 (8th Cir. 2004); *Mobil Expl. & Producing N. Am., Inc. v. Graham Royalty Ltd.*, 910 F.2d 504, 509 (8th Cir. 1990); *Spann v. Lovett & Co.*, 2012 Ark. App. 107, 22, 389 S.W.3d 77, 94 (2012); *Woodline Motor Freight, Inc. v. Troutman Oil Co.*, 327 Ark. 448, 453, 938 S.W.2d 565, 568 (1997). The attachments to the Declaration of Kent Bristow include a calculation of interest at both the 6% and 12% levels.

receipt if the claim was submitted by other means." Ark. Admin. Code § 054.00.43-12(a).

Here, there is no question about whether any of the claims were "clean" as contemplated by these statutes because Defendants paid them all – albeit in the wrong amount as determined by the jury.[8]

```
25  Q.  Has your company, John -- have you followed this formula
 1      and paid every one of the claims at issue in this case pursuant
 2      to the insurance policy that you promised your member?
 3  A.  We have. We've paid the claims that were submitted by
 4      SEP, according to this formula that is referenced in the
 5      evidence of coverage, yes.
 6  Q.  What is the total of those claims? How much have you
 7      already paid?
 8  A.  I think is $1.8, $1.9 million to date.
```

Under these statutes, if payment is not made in full in the time specified by Rule 43-12(a), then the insurer is obligated to pay the amount due "times 12% per annum times the number of days in the delinquent payment period, divided by 365." Ark. Admin. Code § 054.00.43-12(c). Interest runs from the sixty-first day after the insurer's receipt of the claim until it is paid in full. Ark. Admin. Code § 054.00.43-12(c). "[A] provider contracted with a Health Carrier," like SE Physicians, is expressly included in the definition of a "Health Claimant," who is entitled to Prompt Pay interest. Ark. Admin. Code §§ 054.00.43-5(n), 054.00.43-12(c).

Here, none of the claims at issue were timely paid at the rate specified under the September 2011 contract. Thus, under the Prompt Pay Statute and Rule 43-12,

---

[8] Trial Transcript Day 6 at 96:25-97:8, testimony of John Ryan.

SE Physicians is entitled to interest beginning from the sixty-first day after the Defendants' receipt of each claim to the date those claims are finally paid.

To determine the amount of interest owed under these statutes, SE Physicians used the Defendants' spreadsheet of claims to calculate the average number of days between the date the services were provided and the date Defendants received the claims.[9] On average, Defendants received the claims at issue 29.7 days following the date of service.[10]

For that reason, in calculating the interest due, SE Physicians rounded the number up to 30 days after the date of service for each claim, then added the 61 days as required by the statute and calculated the amount of interest owed on the underpaid amount of the claim; i.e. the difference between 75% of the billed charge and the amount allowed/paid by Defendants.[11]

As of August 27, 2020, based on the same claims on which the jury awarded the $9,426,487, SE Physicians is entitled to $2,316,811 in interest pursuant to these statutes.[12]

Note, interest will continue to accrue on the underpaid claims at the daily amount of $2,919.21 through the time Judgment is entered and until the date on which Defendants pay such claims in full.[13]

---

[9] Ex. E to Motion, Bristow Declaration ¶ 5.
[10] *Id.*
[11] *Id.* ¶ 6.
[12] *Id.* ¶ 7.
[13] *Id.* ¶ 8.

For these reasons, the judgment should reflect the total amount of interest due through August 27, 2020 ($2,316,811), together with the daily amount of interest at $2,919.21 per day that accrues on the underpaid claims up to the entry of judgment and until such claims are paid in full.

### 2. *SE Physicians is also entitled to post-judgment interest on its fess, expenses and costs.*

28 U.S.C. § 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Post-judgment interest is calculated daily and compounded annually. 28 U.S.C. § 1961(b). As of this filing, the post-judgment interest rate specified by 28 U.S.C. § 1961 is 0.13%.[14]

Because the Prompt Pay Statute controls the amount of interest due on the underpaid claims until such time as those claims are paid in full, the post-judgment interest set forth above should only be applied to the attorneys' fees, expenses and taxable costs portion of the final judgment.

## C. SE Physicians is entitled to costs under 28 U.S.C. § 1920.

Taxable costs in federal court are governed by 28 U.S.C. § 1920.[15] Under that statute, SE Physicians should be awarded $36,790.09 for the following costs:

---

[14] *See* Selected Interest Rates (Daily) – H.15, *available at* https://www.federalreserve.gov/releases/h15/
[15] *See* Ex. F to Motion, Verified Bill of Costs of Judy Henry.

- $1,125 for clerk or marshal fees. 28 U.S.C. § 1920(1);

- $34,106.84 for transcript fees. 28 U.S.C. § 1920(2);[16]

- $932 for printing and witnesses fees. 28 U.S.C. § 1920(3); and

- $626.25 for exemplification and costs of copies. 28 U.S.C. § 1920(4).[17]

### III.   CONCLUSION

For the reasons stated above, judgment should be entered awarding SE Physicians all of the relief awarded by the jury, plus attorneys' fees, expenses, interest, taxable costs and post-judgment interest together with such other and further relief to which it is entitled.

---

[16] *See also Craftsmen Limousine, Inc.*, 579 F.3d at 898.
[17] S*ee also IPSCO Tubulars, Inc.*, No. 3:10CV00021 BSM, 2016 WL 11527026, at *3.

Respectfully submitted,

| | |
|---|---|
| WRIGHT, LINDSEY & JENNINGS LLP<br>200 West Capitol Avenue, Suite 2300<br>Little Rock, AR 72201<br>Telephone: 501.371.0808<br>Facsimile: 501.376.9442<br>Email:  jhenry@wlj.com<br>          mthompson@wlj.com<br>          bdrennon@wlj.com<br>          jmoss@wlj.com<br><br>By: <u>Judy S. Henry</u><br>Judy Simmons Henry (84069)<br>Michael A. Thompson (2010146)<br>Baxter D. Drennon (2010147)<br>Jaimie G. Moss (2012228) | AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, PC<br>1221 McKinney, Suite 2500<br>Houston, TX 77010<br>Telephone:713.655.1101<br>Email: zavitsanos@azalaw.com<br>         leyendecker@azalaw.com<br>         mkillingsworth@azalaw.com<br><br>John Zavitsanos<br>P. Kevin Leyendecker<br>Michael Killingsworth<br>(*Pro Hac Admission*) |

HANSHAW KENNEDY HAFEN, LLP
1415 Legacy Drive, Suite 350
Frisco, TX 75034
Telephone: 972.310.6500
Email: cdk@hanshawkennedy.com

Collin D. Kennedy
(*Pro Hac Admission*)

*Attorneys for Southeastern Emergency Physicians, LLC*