IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| SOUTHEASTERN EMERGENCY PHYSICIANS, LLC | | PLAINTIFF |
| v. | CASE NO. 4:17-CV-00492 BSM | |
| ARKANSAS HEALTH & WELLNESS HEALTH PLAN, INC., *et al.* | | DEFENDANTS |

### AFFIDAVIT OF JUDY SIMMONS HENRY

I, Judy Simmons Henry, state the following on oath and affirmation:

1. I am over the age of 18 years. I am competent to testify and have personal knowledge of the facts stated in this affidavit.

2. I am a partner of Wright, Lindsey & Jennings LLP ("WLJ"). WLJ has represented plaintiff Southeastern Emergency Physicians, LLC ("SE Physicians") in this matter since its inception, which lasted for three years and included a seven-day jury trial spread over three weeks. I have also reviewed the billing and expense records attached to this affidavit.

3. I have practiced law with WLJ in Central Arkansas for more than 30 years. Specifically, I have been licensed to practice in Arkansas by the Arkansas Supreme Court since 1984. My license to practice law has never been suspended or revoked and I am currently a member in good standing with the State Bar of Arkansas. I am also admitted to practice before the United States Supreme Court, the United States Court of Appeals for the Eighth Circuit, the United States District Courts for the Eastern and Western Districts of Arkansas, and the United States Bankruptcy Court for the Eastern and Western Districts of Arkansas. I have also been admitted to practice *pro hac vice* in various state courts and federal district courts in states other than Arkansas, including in Mississippi, Florida, Georgia, Oklahoma, Delaware, New York, and Louisiana.

4. Following my graduation from law school, I served as a law clerk to the Honorable James G. Mixon of the United States Bankruptcy Court for the Eastern and Western Districts of Arkansas. I joined WLJ in 1988. During my time as a law clerk for Judge Mixon, and during my more than 30 years in private practice, I have been engaged in a practice that includes working on and trying commercial disputes in state and federal courts and have been lead counsel in innumerable commercial disputes, including healthcare

2183280-v1

**EXHIBIT B**

matters. In 2009, I was certified by the NFL Players Association as an NFL Contract Advisor. I currently represent D-1 college football coaches. I am a member of the American Bar Association (Business Law Section). I have also held several positions within the Arkansas Bar Association, serving in the Debtor-Creditor Rights Section as Chair from 2002-03 and as Vice Chair from 2001-02, as well as in the Business Law Section as Chair from 2004-05, Vice Chair from 2003-04, and Secretary/Treasurer from 2002-03. I am a member of the Pulaski County Bar Association and the Debtor-Creditor Bar Association of Central Arkansas, where I served as president in 1991 and Vice President in 1990. I am also a Fellow of the Arkansas Bar Foundation. I was appointed by former Attorney Generals Mark Pryor and Dustin McDaniel to serve as an alternate member of the Arkansas Judicial Discipline and Disability Commission from 2001 until 2014, and currently serve on the three-member panel of the Arkansas Judicial Ethics Advisory Commission, having been appointed in 2016. I am a charter faculty member of the Arkansas Professional Practicum. I have also served as a Special Justice to Arkansas Supreme Court.

5. I was named as one of The Best Lawyers in America© (2005-2021) in the categories of Bankruptcy and Creditor Debtor Rights / Insolvency and Reorganization Law and Commercial Litigation, and an Outstanding Lawyer in America (2003-05). I was also inducted as a Fellow of Litigation Counsel of America (2008) and recognized for Arkansas Best of Continuing Legal Education by the Arkansas Bar Association (1998-2006, 2013-2017). In 2016, I was honored by the Arkansas Bar Association at its annual meeting with a special CLE Award. I have been recognized by Mid-South Super Lawyers for Business Litigation (2006-2019), named as a Top 50 Arkansas Lawyer (2006-2019) and Outstanding Mid-South Female Business Litigation Lawyer (2012-2019). Since 2009, Chambers USA America's Leading Lawyers has recognized me for my business litigation practice. I am rated AV® Preeminent™ 5.0 out of 5 Peer Review Rating through LexisNexis Martindale-Hubbell, www.martindale.com/ratings.

6. I was the lead partner for WLJ for the entirety of this action. I am familiar with the experience and abilities of all of the WLJ attorneys who worked on this file and the work they performed for SE Physicians, as I supervised and led every aspect of WLJ's work in this matter. I am also familiar, based on my more than 30 years of practice in this area, with the market rates for attorneys practicing in Central Arkansas. Materials related to WLJ, myself, and my two partners who also served as trial counsel for SE Physicians (Michael Thompson and Baxter Drennon) are attached as Exhibit 1 to this affidavit.

7. These fees and expenses discussed in this affidavit are described in more detail in the chart attached as Exhibit A to SE Physicians' motion for entry of

judgment, which contains an accurate and complete listing of the fees and expenses SE Physicians incurred in this matter.

8. True and correct copies of WLJ's partially redacted billing records are attached as Exhibit 2 to this affidavit. True and correct copies of EconOne's billing records are attached as Exhibit 3 to this affidavit.

9. Considering the nature of the issues prepared for trial and tried in this matter; the result obtained by the attorneys representing SE Physicians; the amount and nature of work performed by the attorneys and paralegals of WLJ; the skill, training, and experience of the WLJ attorneys and paralegals who worked on this file; and the hourly rates and amount of time incurred by the lawyers and paralegals of WLJ, it is my opinion that the WLJ rates reflected in the time records for attorneys and paralegals are reasonable in light of my experience with rates charged for attorneys' and law firm services in commercial litigation matters of this type in federal and state courts in Central Arkansas, and are consistent with hourly rates charged by practitioners of comparable experience in these areas on such matters. It is also my opinion based on these considerations that the time records reflect that the tasks performed as part of the representation by WLJ, as reflected in WLJ's billing records, were reasonably undertaken as part of the representation, and that the time spent on these tasks was reasonably expended.

10. None of the time billed by WLJ related to clerical matters. It was acceptable to SE Physicians for travel time associated with the representation to be billed at the hourly rates established for the overall file. It is customary in my experience for client billing policies to govern on this issue, and that when such billing policies allow for travel time, it is reasonable for attorneys to charge their customary rates for such time.

11. The fees billed by WLJ are reasonable considering the factors set forth in *Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 229, 800 S.W.2d 717, 718-19 (1990):

    a. **<u>The experience and ability of the attorneys.</u>**

    My experience is described above. Working with me as trial counsel on this matter were my partners, Michael Thompson and Baxter Drennon. Mr. Thompson and Mr. Drennon have both been practicing law for 10 years. Mr. Thompson graduated at the top of his law school class and wrote the top paper on the bar exam the year he was licensed. He has built a robust appellate and litigation practice and in the last five years, he has served as appellate counsel in more than two dozen cases in front of the Arkansas appellate courts and the Eighth Circuit Court of Appeals, including serving as lead appellate counsel in

many of these cases. Mr. Drennon is a national board member of the Defense Research Institute (DRI) and has been trial counsel in approximately 15 cases, including several as first chair. He is one of the finest trial lawyers I have ever seen at his level of experience. I have also been fortunate to work with many other members of the WLJ team on this matter, including partners, associates, and paralegals. These team members also are an essential part of the firm's representation and results obtained for SE Physicians.

b. **The time and labor required to perform the service properly; and the novelty and difficulty of the issues involved.**

This case was litigated over three years, and trial required seven days, spread over three weeks. Further, the time and labor required were multiplied by the Defendants' actions late in the case, like serving new discovery less than 30 days before the discovery deadline in place at that time (which resulted in a production of nearly 395,000 pages of additional documents), the Defendants' late production—at and after the discovery deadline—of nearly 33,000 pages of documents that should have been produced long ago, the Defendants' late allegations of upcoding claims that were finally withdrawn on the last day of trial (which resulted in additional witnesses being prepared and two depositions held on the first day of trial), the Defendants' disclosure of new legal issues for the first time in their motion for judgment as a matter of law made after SE Physicians rested its case, and the Defendants' insistence, up until the Sunday before the last two days of trial, that they would call a total of eight witnesses in their case in chief, when they ultimately called only three (one of whom was by deposition). *See All-Ways Logistics, Inc. v. USA Truck, Inc.*, No. 3:06CV0087 SWW, 2007 WL 4285410, at *10 (E.D. Ark. Dec. 4, 2007), aff'd, 583 F.3d 511 (8th Cir. 2009) (holding that large fee was warranted to plaintiff because "[t]he defense has been thorough, vigorous, unyielding, and unrelenting"). WLJ attorneys expended a total of 4,151 hours litigating this case over three years. The time spent was entirely reasonable.

c. **The amount involved and the results obtained.**

SE Physicians requested $9,426,487 from the jury and was awarded every penny. This amount is significant and supports the reasonableness of fees incurred.

d. **The novelty and difficulty of the issues involved.**

As SE Physicians' counsel explained repeatedly on the record during trial, "there is a national tug-of-war going on right now between insurance companies and Celtic providers. This case here—this is ground zero. This is the tip of the dispute. This is the first case in the country to go to trial." (Trial Transcript, Day 4, at 25:8-19.) It also required proof of the parties' relationship and interactions over a nine-year period, with approximately 12,500 healthcare claims at issue. *See All-Ways Logistics, Inc.*, 2007 WL 4285410, at *10 ("The issues at stake were significant and aggressively litigated by USA against a factual background that was, contrary to USA's assertion, difficult to piece together."). Further, this factor recognizes that an aggressive, unsuccessful defense warrants a higher fee to the successful plaintiff. *Id.* In defending this matter, the Defendants were aggressive and relentless, particularly leading up to and during trial. Indeed, the parties may have spent more time in bench conferences than testimony at trial. That aggressive defense failed, and SE Physicians is entitled to recover the additional fees and expenses incurred because of the Defendants' discovery and litigation tactics.

e. **The fee customarily charged in the locality for similar legal services.**

WLJ charged SE Physicians at the following rates: up to $365 per hour for me as lead attorney (given that this matter was pending for three years, my rate was increased up to this amount over time), up to $275 per hour for Michael Thompson, $275 per hour for Baxter Drennon, and up to $135 for paralegals. My hourly rate in other similarly complex commercial matters exceeds the rate in this case. Other WLJ partners and associates billed at the rates reflected in the attached billing records. These fees are reasonable and consistent with the prevailing fees in this market for similar work. Judges in this district have approved fees as high as $375 per hour for senior partners in this locale, $300 for junior partners, and $250 for associates. *See Retro Television Network, Inc. v. Luken Commc'ns, LLC*, No. 4:11-CV-00489-SWW, 2012 WL 682372, at *2 (E.D. Ark. Mar. 2, 2012), *aff'd*, 696 F.3d 766 (8th Cir. 2012). And the *Retro Television* case was in 2012, which adjusted for inflation would mean that a rate in excess of $415 for senior partners would be consistent with prevailing rates today. Finally, in 2008, this Court approved my request for fees at a rate of $285 per hour. *See Shula v. Bank of Am., N.A.*, No. 4:07CV00922BSM, 2008 WL 4277722, at *1 (E.D. Ark. Sept. 15, 2008), vacated on other grounds, 346 F. App'x 133 (8th Cir. 2009) ("The court is familiar with the rates of the attorneys practicing in the

Little Rock market with similar experience to Ms. Henry and Mr. Lancaster and finds that the rates in question are reasonable, given the level of experience, knowledge and ability of Ms. Henry and Mr. Lancaster."). Again, adjusted only for inflation, and not accounting for my additional 12 years of experience, that $285 rate in 2008 is comparable to the up to $365 rate I billed in this case.

f. **Whether the fee is fixed or contingent.**

WLJ billed at fixed hourly rates; however, those rates resulted in a fee substantially below what would have been produced by a contingent fee. In this market, contingent fees in cases that go to trial are commonly 40% or higher. *See Home Mut. Fire Ins. Co. v. Jones*, 63 Ark. App. 221, 232, 977 S.W.2d 12, 17 (1998) (affirming award to plaintiff of 40% contingency fee). If SE Physicians had hired its attorneys on such a fee, then it would now be seeking attorneys' fees in the amount of $3,770,594.80, based on the jury's verdict of more than $9.4 million. By contrast, SE Physicians is seeking total fees that are less than half such a contingent fee, further demonstrating that the requested fees are reasonable.

g. **The time limitations imposed upon the client or by the circumstances.**

Again, this factor should reflect the numerous issues that the Defendants raised late in the life of the trial. The Defendants' conduct created an enormous amount of work in the month leading up to trial and continued to generate innumerable time-sensitive work during the course of trial.

h. **The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.**

WLJ has been involved in this case for its entire three-year life span. In that span, lead WLJ attorney Judy Henry has averaged 464 hours per year over the full three-year period, Michael Thompson has averaged 346 hours per year over a period of approximately 2.5 years, and Baxter Drennon has billed 323 hours in 2020 alone. Some years, these attorneys billed significantly over this average. For example, fully half of my time and Mr. Thompson's time was billed in just the eight months of 2020. This case has been a significant portion of our workload for a period of years, and it has precluded other employment by us.

12. Over the course of this action, SE Physicians incurred a total of $1,077,324.90 of attorneys' fees and $11,215.23 in expenses billed by WLJ. All of these fees and expenses have been paid on behalf of or are currently due from SE Physicians. I also estimate that SE Physicians will incur post-trial fees to WLJ in the amount of $12,500, bringing the total fees at the trial level to $1,089,824.90.

13. In addition, SE Physicians retained Dr. Leslie Schafer of EconOne as an expert witness in this matter. SE Physicians incurred a total of $385,086.29 in fees and expenses billed by EconOne. All of EconOne's fees and expenses have been paid by or are currently being process for payment from SE Physicians.

14. The total of all of these fees and expenses is $1,473,626.42. In light of my experience summarized above, my personal knowledge of the litigation in this matter, and my review of the billing and expense records for this file, it is my opinion that this total amount of fees and expenses is reasonable.

15. The fees and expenses described in this affidavit have been necessarily incurred in the case, and the services for which fees have been charged were actually and necessarily performed.

Further, the affiant sayeth not.

_____
Judy Simmons Henry

**STATE OF ARKANSAS**  )
                       ) SS
**COUNTY OF PULASKI**  )

Subscribed and sworn to before me this 28 day of August, 2020.

_____
Notary Public

My Commission Expires:

03-07-2028
Notary Public